130 So.2d 74 (1961)
Ben F. BULLOCK, Appellant,
v.
Lemmie J. BRANCH, Appellee.
No. C-167.
District Court of Appeal of Florida. First District.
May 11, 1961.
*75 Gray, Chandler, O'Neal & Carlisle, Gainesville, for appellant.
Greene, Ayres & Greene, Ocala, for appellee.
CARROLL, DONALD K., Judge.
The defendant in an action for damages has appealed from a final judgment entered by the Circuit Court for Marion County based upon a jury verdict in the amount of $14,000 in favor of the plaintiff.
The plaintiff's complaint charged the defendant with negligence in the erection and maintenance of a metal sign which was affixed to the front of a building in which the defendant conducted his business. The building was immediately adjacent to a public sidewalk in the city of Ocala. While the plaintiff was walking upon the sidewalk, the sign fell and struck him, causing personal injuries.
One of the principal points pressed by the appellant on this appeal is that the court committed reversible error in permitting the plaintiff's counsel at the trial to make the so-called "golden rule" argument to the jury, as set forth below.
During his argument the plaintiff's counsel said to the jury:
"And then, in addition to that  and I can't give you any guide to go by  the court will instruct you that he's entitled to compensation at your hand at such figure that you think is right for his pain and suffering and for his discomfort, not only in the past but in the future. How much would you pay to have half inch cut inflicted in your skull?"
At this point the defense counsel objected to the argument on the ground that it was "inflammatory and highly irrelevant and immaterial and improper". The trial court overruled these objections, and the plaintiff's counsel continued as follows in his argument to the jury:
"How much would you gentlemen pay? What would I have to pay to inflict a half inch cut into your skull, to render you unconscious, to put you home in bed for a week, to force you to use a cane or crutches for months after that, and to leave you for the balance of your life with your walk affected, with your speech affected, with a tremor, with your memory affected, with your handwriting affected? What do you think it's worth? That's what I'm trying to get at. How much would I have to pay you for you to undergo that for the balance of your life? And how much would I have to pay you to shorten your life? The older you grow, the more precious and and [sic] the sweeter life becomes. How much would you sell me a year of your life for?"
At this point the defense counsel renewed his objections, which were promptly overruled by the Court.
There are many fundamental reasons why we think that the quoted argument was improper. The very essence of our court system in this country is the principle that every party is entitled to a fair and impartial jury as well as to a fair and impartial judge. This court, the Supreme Court of Florida, and other courts have held that every litigant is entitled to nothing less than "the cold neutrality of an impartial judge," to use the words of the *76 immortal Edmund Burke and this the parties had in the present case. See State ex rel. Arnold v. Revels, Fla.App. 1959, 113 So.2d 218, and State ex rel. Davis v. Parks, 1939, 141 Fla. 516, 194 So. 613. By the same token, we think that every party is entitled to nothing less than the cold neutrality of an impartial jury when such body determines the questions of fact involved in his case. While the attainment of this ideal of the "cold neutrality" of the jury may often seem unrealistic, nevertheless it is the duty of every lawyer, as an officer of the court and as a member of the team of the administration of justice, to refrain from all efforts to inflame the jury in a trial or otherwise to disturb them in their position of neutrality and try to cause the jury to make their sacred determination of questions of fact in a biased or partisan manner. This duty on the bar is even more compelling today in view of the fact that in our court system the jury is usually in effect the final arbiters of the facts involved in a case, whose determination of the facts can only rarely be disturbed by trial and appellate judges, who never are authorized to substitute their findings of fact for those of a jury when the jury's findings are supported by competent, substantial evidence. A trial court should remain ever alert to discourage and counteract any effort made by a party or his attorney to cause the laymen, who have been called under our court system to act as the final arbiters of the facts, to depart from their neutrality and make their determination from the point of view of bias or personal interest.
It is hard to conceive of anything that would more quickly destroy the structure of rules and principles which have been accepted by the courts as the standards for measuring damages in actions of law, than for the juries to award damages in accordance with the standard of what they themselves would want if they or a loved one had received the injuries suffered by a plaintiff. In some cases, indeed, many a juror would feel that all the money in the world could not compensate him for such an injury to himself or his wife or children. Such a notion as this  the identifying of the juror with a plaintiff's injuries  could hardly fail to result in injustice under our law, however profitable it might be deemed by many plaintiffs in personal injury suits.
As we said in Pensacola Transit Co., Inc. v. Denton, Fla.App. 1960, 119 So.2d 296, 298, in connection with a different kind of influence on a jury's mind injected by an attorney during a trial:
"Under any court system it is difficult to attain a true and just result even under the most favorable conditions because of the frailty of man and his subjectivity to various prejudices and other influences that may warp his judgment in attempting to attain the ultimate truth in a given factual situation. The injection by either party to a cause, whether deliberate or inadvertent, of any such improper influence in a jury trial is a distinct disservice to the administration of justices, and lawyers, as officers of the courts, and the courts, on their own motion if need be, must be ever vigilant to see that no such influence creeps into the proceedings in even the slightest degree and subverts the noble purpose of our court system to provide `justice under law.'
"The injection of such an influence makes the task of an appellate court an impossible one. No one on earth can tell with certainty the full effect of that influence upon a juror's mind."
Judging by the large number of cases in other jurisdictions on the point, the practice seems to have been widespread among attorneys for plaintiffs in personal injury actions, in their zeal to encourage large verdicts in the interest of their clients, to urge jurors to place themselves in the position of a litigant or to allow such recovery as they would wish if in the same position. A comprehensive annotation devoted to the subject of the prejudicial effect of such *77 arguments may be found in 70 A.L.R.2d at pages 935-956. The annotator herein thus states his general conclusion (70 A.L.R.2d at page 937):
"It has been recognized in many cases that the prejudice resulting from counsel's argument, in a civil case, urging the jurors to place themselves in the position of one of the litigants, or to allow such recovery as they would wish if in the same position, constituted reversible error."
Cited immediately following this statement as illustrations of such holding are innumberable cases from Illinois, Iowa, Kentucky, Michigan, Minnesota, Missouri, Texas, Virginia, Wisconsin, and the federal courts. This same general holding is reflected in 53 Am.Jur. Trial, Sec. 496, p. 401, as follows: "Likewise, it is generally considered improper for an attorney, in his argument in a personal injury case, to ask the jury what would compensate them for a similar injury."
Upon examining the decisions of the courts of Florida on the subject of prejudicial influences affecting the impartiality of juries, we note a strong tendency to protect diligently the rights of party litigants against the injection of improper influences, whether due to the understandable zealousness of counsel or otherwise. Our Supreme Court has declared that a jury's verdict "must be based on an unimpassioned evaluation of relevant, material evidence `uninfluenced by the appeals of counsel to passion or prejudice.'" Seaboard Air Line R. Co. v. Ford, Fla. 1957, 92 So.2d 160, 165, and Seaboard Air Line R. Co. v. Strickland, Fla. 1956, 88 So.2d 519. To the same effect, the District Court of Appeal for the Third District of Florida held in Butler v. Smith, Fla.App. 1958, 104 So.2d 868, that, when the cause is tried on immaterial issues that implant in the minds of a jury prejudice or bias against one of the parties, even though the motives were mainly counsel's overzealousness for the interests of his client, justice has been thwarted and the parties have been denied a fair trial, requiring a reversal of the judgment and remand of the cause for a new trial.
In line with the above authorities we hold that, although the so-called "golden rule" argument of plaintiff's counsel was undoubtedly the result of the overzealousness of a competent attorney for the interests of his client, the argument was clearly improper, and the trial court committed error in not sustaining the objections to such argument which were timely interposed by the defense counsel at the trial. While it is true that the defense counsel did not follow up his objections with a motion that the court instruct the jury to disregard the argument, the argument was so palpably prejudicial and inflammatory that the trial court, even in the absense of such a defense motion, should on its own motion have instructed the jury to disregard the argument. By overruling the defense counsel's objections and failing to instruct the jury to disregard the argument and failing even to caution the plaintiff's attorney against continuing to argue along the same tenor, the trial court no doubt gave the impression to the jury that the argument correctly reflected the applicable law and that they could properly consider what they themselves would want in determining the award of damages.
It is true, as the appellee points out in his brief, that there is no evidence in the record demonstrating that the argument in question had a prejudicial or inflammatory effect upon the jury, but it is the very nature of the type of argument in question that it is usually impossible to prove one way or the other what effect an argument of this kind has upon the jury mind. In our view, such prejudicial and inflammatory effect need not be demonstrated in a case of this kind to show reversible error but may be presumed from the fact of the making of such an improper argument.
*78 In view of our holding regarding the argument of counsel, it is not necessary for us to consider here the other assignments of error raised in this appeal by the appellant.
Our conclusion, therefore, is that the final judgment appealed from must be, and it is, reversed, and the cause is remanded for a new trial.
Reversed and remanded for a new trial.
WIGGINTON, Chief Judge, and STURGIS, J., concur.