373 So.2d 446 (1979)
George E. BEW and Betty Jonalyn Bew, His Wife, Appellants,
v.
Norman F. WILLIAMS and State Farm Mutual Automobiles Insurance Company, Appellees.
No. 78-449.
District Court of Appeal of Florida, Second District.
August 1, 1979.
Michael Olin and Walter H. Beckham, Jr. of Podhurst, Orseck & Parks, Miami, and B.J. Masterson of Masterson, Rogers & Patterson, St. Petersburg, for appellants.
Paul A. Kaleel and William C. Kaleel, Jr. of Kaleel & Kaleel, St. Petersburg, for appellees.
*447 OTT, Judge.
Plaintiff/appellant Betty Bew was injured in an automobile accident. The jury found that plaintiff was five percent contributorily negligent and that the defendant driver was ninety-five percent at fault. Total damages were assessed at $42,500.[1]
Defendants  appellees herein  moved for a new trial. The lower court granted the motion, stating, in relevant part, as follows:
At the time that counsel for the Defendants approached the bench contending that Plaintiffs' counsel had violated the "Golden Rule", the Court recalls specifically announcing to the attorneys, though the same does not appear in the transcript herein, that what may have been the intent of Plaintiffs' counsel in using the pronoun "you" may have created a different mental impression in the minds of the jurors in this case that the reference was, in fact, to them, personally. Even though there was no motion to strike the remarks that had just been made by Plaintiffs' counsel, this Court believes, based upon the foregoing authorities, [Bullock v. Branch, 130 So.2d 74 (Fla. 1st DCA 1961); Decks, Inc. v. Nunez, 299 So.2d 165 (Fla.2d DCA 1974)] that it had an affirmative duty to strike the remarks by Plaintiffs' counsel that violated the "Golden Rule" and to instruct the jury to disregard the same; the Court's failure constituted harmful error, and is the basis for a new trial in this cause.
On appeal, appellants Betty Bew and her husband contend that the comments of counsel on closing argument did not constitute a "Golden Rule" argument. Secondly, appellants contend that even if counsel's argument was capable of being misunderstood as an improper "Golden Rule" argument that such possibility does not rise to the level of reversible error. We agree and reverse.
A leading case on the so-called "Golden Rule" argument is Stewart v. Cook, 218 So.2d 491 (Fla. 4th DCA 1969). In that case, the court noted that "the type of argument condemned by [Florida case law] in effect says to the jury: `How much would you like to pay or receive if you were in the shoes of this defendant or plaintiff?'" 218 So.2d at 493. The Stewart court also stated:
Such an argument is pernicious for at least two reasons. It tends to inflame the jury by inviting it to become personally involved in the question of damages. Secondly, the argument diverts the jury's attention from the proper measure of damages. Id.

To the same effect was Bullock v. Branch, 130 So.2d 74 (Fla. 1st DCA 1961) wherein the court stated:
It is hard to conceive of anything that would more quickly destroy the structure of rules and principles which have been accepted by the courts as the standards for measuring damages in actions of law, than for the juries to award damages in accordance with the standard of what they themselves would want if they or a loved one had received the injuries suffered by a plaintiff. In some cases, indeed, many a juror would feel that all the money in the world could not compensate him for such an injury to himself or his wife or children. Such a notion as this  the identifying of the juror with a plaintiff's injuries  could hardly fail to result in injustice under our law, however profitable it might be deemed by many plaintiffs in personal injury suits.
130 So.2d at 76.
We are in complete agreement with these authorities which point out the danger presented by "Golden Rule" arguments. However, examination of the language used by counsel on closing argument reveals that he was simply dramatizing the devastating impact of the tragedy on the injured plaintiff by the use of rhetoric.[2] We agree with the Stewart court when it said:

*448 [T]he remarks did not have the inflammatory quality of a true golden rule argument for the simple reason that they did not strike at that sensitive area of financial responsibility and hypothetically require the jury to consider how much it would wish to pay or receive if it were involved in a similar situation.
218 So.2d at 494. See Baggett v. Davis, 124 Fla. 701, 169 So. 372 (1936).
The lower court made reference to the use by plaintiffs' counsel of the pronoun "you". The court stated that this "may have created a different mental impression in the minds of the jurors in this case that the reference was, in fact, to them, personally." We disagree with this assessment of the use of the word "you." The use of the pronoun "you" was clearly a reference to the plaintiff, not the jury. To attribute the connotation suggested requires an assumption that the jury was inattentive and that such inattention resulted in completely changing the sense of the argument. In the recent First District Court of Appeal case of Bell v. Baptist Memorial Hospital, 363 So.2d 28 (Fla. 1st DCA 1978), our sister court reversed the granting of a new trial. The new trial had been granted on three grounds, one of which was a purported "Golden Rule" argument. In reversing, the court noted "that both parties' counsel used the abstract `you' in their closing remarks to the jury." 363 So.2d at 29. This was the sense in which the "you" was used in the instant case. Thus, simply stated, the remarks made by counsel in closing argument did not constitute a Golden Rule argument per se.
Another reason for our reversal relates to the fact that there is no clear indication that the jury was prejudiced. Plaintiffs asked for a verdict of $75,000; the jury returned a verdict in the neighborhood of $40,000. Interestingly, defendants' offer of judgment prior to trial was for $35,000. We agree with the appellants' contention that any passion or prejudice surely would have been reflected in a verdict giving plaintiffs an amount at least approaching what they asked for. That the verdict reached by the jury came so close to the defendants' own assessment of the case reveals, we believe, that there was no prejudice caused by the remarks of counsel on closing argument.
Even if the mere possibility of misunderstanding is sufficient to raise the spectre of a Golden Rule argument we still have the question of whether or not there was reversible error. The lower court found harmful error to exist.
In the instant case, objection was made in a timely fashion and the court directed plaintiffs' counsel to "cease and desist." No motion to strike was requested and no motion for mistrial was made. In its instructions to the jury, the court stated:
Your verdict must be based on the evidence that has been received and the law on which I have instructed you. In *449 reaching your verdict, you are not to be swayed from the performance of your duty by prejudice, sympathy or any other sentiment for or against any party. [Emphasis supplied.]
After all, the objecting party (assuming improper argument) may prefer to go to the jury and certainly should be permitted to waive his right to a mistrial even if entitled to it. We think trial counsel should be expected to make the decision or choice. The lower court erroneously concluded (on motion for new trial) that it had "an affirmative duty to strike the remarks by Plaintiffs' counsel that violated the Golden Rule and to instruct the jury to disregard the same."
The order of the trial court granting a new trial is set aside, the verdict of the jury is reinstated and the case remanded for the entry of a final judgment thereon.
GRIMES, C.J., and RYDER, J., concur.
NOTES
[1] After appropriate adjustment a final judgment was entered in the amount of $39,248.30.
[2] "... I sometimes think ... that it's probably a good thing that we can't see into the future. If Betty Bew [plaintiff] had been told on the morning of March 13, 1974, what lay ahead, why, she would have been appalled... . If she had been told on that morning, `This is going to be one of the worst, possibly the worst day of your life. While you are driving down First Avenue South about Noontime, a car is going to crash through the red light directly into the path of your automobile, cross over First Avenue South after you collide with it, almost striking a car in which a Mr. Burroughs, former Mayor of St. Pete, is sitting, waiting for the light to change, come to rest somewhere down near the intersection indicated by Plaintiffs' Exhibit 1. You will be taken to a hospital because your face would have been lacerated and with a four inch laceration, deep laceration in your face. You will be examined by a plastic surgeon. He will say that "because of the seriousness of this head injury, I want you to call in a neurosurgeon to make certain I can operate." So he doesn't operate for three or four days. He calls in a neurosurgeon on you, and you will find his consultation report, the hospital chart, find that the lady has a cerebral concussion and that she is operable. You have suffered something called an aneursym which was caused by a piece of glass plunging into the area adjacent near the left ear, and it's going to go in with such force as to create what is called a communication between the artery and vein, something that wasn't there before. An artificial linkage between the two blood vessels. And this will require an operation ultimately, because with each beat of your heart, a sound like a whoosh that is so powerful that other people can hear it will be heard.'"