500 So.2d 228 (1986)
Sidney SCHREIDELL, Peter J. Finnegan and Brite Electric Division of Ju-My-Da Corporation, a Florida Corporation, Appellants,
v.
Rabbi Bernard P. SHOTER, and Delores Shoter, His Wife, Appellees.
No. 86-378.
District Court of Appeal of Florida, Third District.
December 2, 1986.
Rehearing Denied January 29, 1987.
*229 Walton, Lantaff, Schroeder & Carson and Sally R. Doerner and Douglas Stein, Miami, for appellants.
Joyce M. Siemon, Richard J. Burton, North Miami Beach, for appellees.
Before HENDRY and NESBITT and DANIEL S. PEARSON, JJ.
HENDRY, Judge.
This cause is before the court for review of a final judgment awarding damages to plaintiffs and taxing costs against defendants. For reasons more fully developed below, we reverse and remand for further proceedings.
Rabbi Shoter and his wife filed suit in Dade County Circuit Court against Sidney Schreidell, Schreidell's partner, Peter Finnegan, and their company, Brite Electric Division of Ju-My-Da Corporation (Brite Electric), seeking damages for the alleged defamation of the rabbi. The complaint alleged that Mr. Schreidell, a member of the board of directors of the synagogue, made certain remarks to other board members during a discussion concerning renewal of the employment contract of Rabbi Shoter.
In late 1983, when Rabbi Shoter's contract was nearing its end, the executive board of Temple Beth Ahm decided to bring the issue of negotiating his contract before the full board of directors. At its October, 1983 meeting, the board voted to negotiate a new contract with him. In January, 1984, the rabbi was given a contract upon which he and the temple's negotiating committee had agreed, and the document was then brought to the full board for possible amendment at its January, 1984 meeting. It is undisputed that only board members were present at this meeting. It was during this meeting that Mr. Schreidell allegedly made the comments that led to this action.
Essentially, Schreidell's remarks, as extracted from the record, were that Mr. Finnegan had received a telephone call from an electrical union representative. This representative stated that he had been contacted by a judge or judges who warned him that Mr. Schreidell's business would suffer if he did not cease his opposition to the rabbi's retention. None of the plaintiffs' witnesses who related their accounts of Mr. Schreidell's comments at the meeting gave the same version of the incident. One witness recalled that Schreidell specifically referred to the rabbi's committing extortion and implicated a judge by name. Several other witnesses denied hearing any particular judge identified, and only one other witness recalled hearing the term "extortion."
During his testimony, Mr. Schreidell denied making the remarks as related by the witnesses. Instead, he stated that, with the permission of the temple's president, he had "relay[ed] some incidents that had taken place." Mr. Schreidell testified he said that:
In October my partner received a phone call from his business from the union [representative], Archie Fernandez, who told them he received a phone call from a judge who said I hadn't paid my dues to *230 the temple, and because the temple wanted to get paid, I was harassing the Rabbi and that it would be a good idea for me to leave the Rabbi alone or business could suffer.
Mr. Schreidell denied identifying a judge by name. Co-defendant Finnegan, who actually took the call, also testified that the union representative stated that "these are very powerful people and they can cause you a lot of problems." Finnegan specifically denied either hearing or stating to Mr. Schreidell a threat that his company could suffer a loss of Jewish business, nor did he recall the mention of anyone's name.
At the end of the January board meeting, the rabbi's contract was tabled without being voted on. In late January, Mr. Schreidell repeated his comments at an executive board meeting of the temple. The employment contract was not adopted at the February board meeting. Rabbi Shoter's contract expired in July, 1984, at which time his employment at Temple Beth Ahm ended.
In their answer, the defendants raised the affirmative defense of a qualified privilege protecting the remarks. The trial judge ruled as a matter of law that a qualified privilege did not exist upon these facts. The court further declined to submit the issue of actual malice to the jury. The court refused to instruct the jury on the Florida law concerning the qualified privilege defense. Instead, the only instruction the jury received on the substantive elements of defamation stated:
Spoken words falsely imputing criminal offenses to another are actionable, per se. Malice is presumed, as a matter of law, for the publication of words which are actionable in themselves or per se.
The court also instructed the jury:
If you find that Mr. Schreidell, in fact, accused Rabbi Shoter of extortion, and that the accusation was false, then you can award Rabbi Shoter punitive damages.
At the conclusion of the trial, the jury returned a verdict for the plaintiffs. It awarded Rabbi Shoter $158,300 in compensatory and $87,500 in punitive damages, and gave Mrs. Shoter $41,700 for her derivative claim.[1] The defendants filed a motion for a new trial which was denied, and this appeal followed.
The appellants raise three points on appeal. First, they contend that the trial judge erred in ruling as a matter of law that a qualified privilege did not exist and in refusing to submit that affirmative defense to the jury.
The Florida Supreme Court in Coogler v. Rhodes, 38 Fla. 240, 248, 21 So. 109, 112 (1897) (citing Townshend on Slander & Libel § 209 (4th ed.)), first enunciated the concept of a qualified privilege:
Where a person is so situated that it becomes right, in the interests of society, that he should tell to a third person certain facts, then, if he bona fide, and without malice, does tell them, it is a privileged communication.
Thus, a statement is qualifiedly privileged if made by one who has a duty or interest in the subject matter to one who has a corresponding duty or interest. Teare v. United Association of Journeymen & Apprentices of the Plumbers & Pipe Fitters Industry Local 295, 98 So.2d 79 (Fla. 1957); see also Loeb v. Geronemus, 66 So.2d 241 (Fla. 1953); Water & Sewer Utility Construction, Inc. v. Mandarin Utilities, Inc., 440 So.2d 428 (Fla. 1st DCA 1983); Lundquist v. Alewine, 397 So.2d 1148 (Fla. 5th DCA 1981). Moreover, where a qualified privilege exists, plaintiffs must prove express malice or malice in fact in order to recover. Myers v. Hodges, 53 Fla. 197, 44 So. 357 (1907); Abraham v. Baldwin, 52 Fla. 151, 42 So. 591 (1906). Actual malice, or malice in fact, constitutes an abuse of a qualified privilege leaving the defendant liable. Axelrod v. Califano, 357 So.2d 1048 (Fla. 4th DCA 1978); see also Lewis v. *231 Evans, 406 So.2d 489 (Fla. 2d DCA 1981) (inspector could defeat contractor's claim of qualified privilege by proving malice in fact, that is, by presenting evidence from which jury could reasonably infer that contractor was motivated by ill will and desire to harm inspector). Therefore, under Florida law, when a statement is qualifiedly privileged and made without malice, there exists no cause of action for defamation. Water & Sewer Utility Construction v. Mandarin Utilities, 440 So.2d at 430. Furthermore, where the evidence is disputed as to the existence or nonexistence of a privilege there is a mixed question of law and fact, and the fact issue is to be determined by the jury. Hartley & Parker, Inc. v. Copeland, 51 So.2d 789 (Fla. 1951); see also Glickman v. Potamkin, 454 So.2d 612 (Fla. 3d DCA 1984) (in a defamation action, the affirmative defenses of truth, good motive and qualified privilege present factual questions for resolution by the jury), review denied, 461 So.2d 115 (Fla. 1985); but see Myers v. Hodges, 53 Fla. at 217, 44 So. at 364 (when the facts are uncontroverted, the court is to determine whether or not the publication is privileged).
Turning now to the instant case, many of the facts and circumstances relevant to the qualified privilege defense were not conceded below. Thus, where the circumstances surrounding the remarks were so thoroughly disputed, the trial court erred in deciding a qualified privilege did not exist as a matter of law.
Appellants further argue that the trial court's denial of their requested jury instructions deprived them of their right to receive a proper adjudication of their affirmative defense.
The failure to give a requested jury instruction constitutes reversible error where the complaining party establishes that:
a) the requested instruction contained an accurate statement of law,
b) the facts in the case supported giving the instruction, and
c) the instruction was necessary for the jury to properly resolve the issues in the case.
Davis v. Charter Mortgage Co., 385 So.2d 1173, 1174 (Fla. 4th DCA 1980) (citing Davis v. Lewis, 331 So.2d 320 (Fla. 1st DCA 1976)), cert. denied, 348 So.2d 946 (Fla. 1977); see Alderman v. Wysong & Miles Co., 486 So.2d 673 (Fla. 1st DCA 1986). A verdict will not be set aside, however, merely because the court failed to give instructions which might properly have been given. Gallagher v. Federal Insurance Co., 346 So.2d 95 (Fla. 3d DCA), cert. denied, 354 So.2d 980 (Fla. 1977). Rather, the standard of review is "whether ... there was a reasonable possibility that the jury could have been misled by the failure to give the instruction." Little v. Miller, 311 So.2d 116, 119 (Fla. 4th DCA 1975) (quoting Ruiz v. Cold Storage & Insulation Contractors, 306 So.2d 153, 155 (Fla. 2d DCA 1975)). More importantly, this in turn depends on whether the omitted instructions addressed a material issue in the case that was not covered by the remaining instructions. Tilley v. Broward Hospital District, 458 So.2d 817 (Fla. 4th DCA 1984); see Llompart v. Lavecchia, 374 So.2d 77, 80 (Fla. 3d DCA 1979) (reversal will not be granted where subject of the instruction is covered in other charges given by the court or where failure to give the instruction is not shown to be prejudicial).
Applying the above principles of law to the case before us, we conclude that the jury, without receiving any instruction on the issue of qualified privilege and malice, could not properly have resolved the issues before them. Consequently, the trial judge's failure to instruct the jury on the affirmative defense of qualified privilege was further error, and the final judgment must be reversed. Tilley v. Broward Hospital District, 458 So.2d at 818; Little v. Miller, 311 So.2d at 119.
The appellants' second point on appeal alleges that the trial judge erred in refusing to direct a verdict in favor of Peter Finnegan and Brite Electric.
*232 A directed verdict is proper only when the record conclusively shows an absence of facts or inferences from facts to support a jury verdict, viewing the evidence in a light most favorable to the nonmoving party. Holmes v. Don Mealey Chevrolet, Inc., 468 So.2d 552 (Fla. 5th DCA 1985); Ferber v. Orange Blossom Center, Inc., 388 So.2d 1074 (Fla. 5th DCA 1980); Otey v. Florida Power & Light Co., 400 So.2d 1289 (Fla. 5th DCA 1981), review denied, 412 So.2d 465 (Fla. 1982); Rivera v. Randle Eastern Ambulance Service, 446 So.2d 200 (Fla. 3d DCA 1984). Therefore, no factual determination is required, and judgment must be entered for the movant as a matter of law. Meus v. Eagle Family Discount Stores, Inc., 499 So.2d 840 (Fla. 3d DCA 1986).
According to the uncontradicted testimony at trial, Peter Finnegan's sole involvement in this incident was his receipt of the telephone call from the union representative and his relaying the message to his business partner, Sidney Schreidell. At trial, Mr. Finnegan testified that he never spoke to anyone except his partner about the call or its contents. He did testify that he "may have been overheard by the secretary." However, a publication is not excessive if the alleged defamatory matter is communicated to interested third parties, or is incidentally overheard or brought to the notice of third parties who are not immediately interested in the matter. 50 Am.Jur.2d Libel and Slander § 283 (1970). Furthermore, it is firmly established that if made in good faith and in the usual course of business, a qualified privilege attaches to statements of an employer and his employees. Id. § 270. Thus, it has been held that the scope of qualified privilege extends to the reasonable use of clerical personnel in the transmission of privileged communications, as well as to incidental publication thereof to employees or associates of either the sender or receiver, provided that such incidental publication is in the usual course of business and is reasonably necessary to effect the communication of the privileged matter to those entitled to receive it. Id. § 285.
Under Florida law, a publication in regard to business, made to others than those interested in the business, is not privileged; but a publication in regard to business made by one having an interest therein and solely to others having an interest in the business is privileged. 19 Fla.Jur.2d Defamation and Privacy § 75 (1980). The privilege furnishes a good defense in a suit for libel unless it can be shown that the publication was made with express malice. Id.; see also Coogler v. Rhodes, 38 Fla. at 249, 21 So. at 112.
Thus, a prima facie showing of a qualifiedly privileged situation was presented with regard to Mr. Finnegan's relating of the telephone call. The burden then shifted to the plaintiffs to prove that he acted with express malice. Lewis v. Evans, 406 So.2d at 492; Axelrod v. Califano, 357 So.2d at 1050. A review of the properly admitted and unrebutted testimony indicates that Mr. Finnegan was not motivated by malice. Regarding the liability of Brite Electric, the liability of a company is dependent upon the liability of its agents. Baker v. Atlantic Coast Line R. Co., 141 Fla. 184, 192 So. 606 (1939). "The test generally applied by the cases is: (a) Was the person who uttered the slanderous words an authorized agent of the corporation? (b) If so, was he at the time acting within the scope of his employment? [and] (c) Was the language charged used in the actual performance of his duties touching the matter in question.?" Id. at 185-86, 192 So. at 607. Thus, in Florida, as elsewhere, a corporation may be liable for its employees' defamation. Diplomat Electric, Inc. v. Westinghouse Electric Supply Co., 378 F.2d 377 (5th Cir.1967). However, under the facts of the instant case, since Finnegan's relaying of the message to Schreidell would be privileged, the company is not subject to liability. Furthermore, there is no evidence in the record that Schreidell's acts at the meetings were in the course of business or authorized by the corporation. Thus, the trial court erred in *233 denying Finnegan and Electric Brite's motion for a directed verdict.
Finally, the appellants argue that the judge erred in failing to grant their motion for a mistrial after plaintiffs' attorney made improper closing remarks to the jury.
An argument that jurors place themselves in the plaintiff's shoes, commonly referred to as a "golden rule" argument, is impermissible and constitutes reversible error. Klein v. Herring, 347 So.2d 681 (Fla. 3d DCA 1977); Miku v. Olmen, 193 So.2d 17 (Fla. 4th DCA 1966); Bullock v. Branch, 130 So.2d 74 (Fla. 1st DCA 1961). Such an argument is improper because it encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence. Ivy v. Security Barge Lines, Inc., 585 F.2d 732 (5th Cir.1978). However, an objection is required to challenge a "golden rule" argument. Le Retilley v. Harris, 354 So.2d 1213 (Fla. 4th DCA), cert. denied, 359 So.2d 1216 (Fla. 1978); Tieso v. Metropolitan Dade County, 426 So.2d 1156 (Fla. 3d DCA 1983).
Although appellants objected and moved for a mistrial, the trial judge made no response to either request, nor did she issue a curative instruction to the jury. Failure to secure a ruling on an objection waives it, unless the court deliberately and patently refuses to so rule. Le Retilley v. Harris, 354 So.2d at 1214; see also Coffman v. Kelly, 256 So.2d 79 (Fla. 1st DCA 1972); Palmer v. Thomas, 284 So.2d 709 (Fla. 1st DCA 1973). Thus, there can be no consideration of the remarks unless the error is fundamental. Le Retilley v. Harris, 354 So.2d at 1214. In view of our reversal on other grounds in the instant case, however, we find it unnecessary to discuss the appellants' argument that the remarks[2] were so demonstrably prejudicial as to constitute irreparable and fundamental error, requiring reversal. On remand, however, counsel's remarks at the conclusion of the new trial must be confined to appropriate arguments.
With regard to the taxation of costs against the appellants, our reversal of the final judgment awarding damages to the appellees also necessitates reversal of the judgment as to costs.
For the foregoing reasons and based upon the authorities cited, the final judgment appealed is reversed and the cause is remanded for a new trial for Sidney Schreidell, with instructions to direct a verdict in favor of Peter Finnegan and Brite Electric.
Reversed and remanded, with instructions.
NOTES
[1] We find appellees' argument that the derivative claim is not before this court to be without merit.
[2] During closing arguments, plaintiffs' counsel stated:

Sid Schreidell, one of those people that everyone has met in his life, decided to get somebody... . He puts things on paper, sets people up, and eventually these guys always win... . They do end up getting your job or having you thrown out of town, and everyone of you has felt that twinge.
* * * * * *
What the judge will say to you is that I don't have to prove actual malice. Him saying what he did, and acknowledging  well, he said he was capable of extortion. He said he didn't call him an extortionist. Is there any difference? Are you capable of child molesting? Are you capable of stealing from your employer?