548 So.2d 258 (1989)
CUMMINS ALABAMA, INC., Appellant,
v.
William A. ALLBRITTEN, et ux., State Farm Fire and Casualty Insurance Company, and U.S. Fire Insurance Company, Appellees.
No. 88-455.
District Court of Appeal of Florida, First District.
July 21, 1989.
*259 Robert B. Parrish and James P. Moseley, Jr., of Taylor, Moseley & Joyner, Jacksonville, for appellant.
Daniel C. Shaughnessy of Coker, Myers & Schickel, P.A., Jacksonville, and Almer W. Beale, II, Jacksonville, for appellees.
*260 ZEHMER, Judge.
Cummins Alabama, Inc., a defendant in the circuit court below, appeals from an order denying its motion to strike the motion for new trial filed by William Allbritten, Gwendolyn Allbritten, State Farm Fire and Casualty Insurance Company, and U.S. Fire Insurance Company (appellees). Cummins Alabama contends that the trial court lacked jurisdiction to consider the motion because it was not timely filed. Cummins Alabama also appeals from the order granting the motion for new trial, arguing abuse of discretion. We hold that the motion was timely filed and reverse the order granting a new trial.

I.
The pertinent facts are as follows. Appellees William and Gwendolyn Allbritten purchased a new 65-foot passenger and fishing vessel, which they named "Sea Gwen," from Cummins Alabama. A-1 Marine, one of the defendants in the case below, built the vessel, and its work included the installation of two diesel engines A-1 Marine had purchased from Cummins Alabama. On May 19, 1984, the Allbrittens took possession of the Sea Gwen and departed from a dock in Panama City enroute to Tampa. The next day, at approximately 12:30 p.m., the Allbrittens' son Billy noticed smoke coming out of the port engine exhaust. He raised the hatch to the engine room and thick, black smoke billowed out. He undertook to determine the location of the fire in the engine room and attempted to extinguish it with hand-held extinguishers. All of the Sea Gwen's passengers abandoned ship, and the vessel sank and was never found. Billy Allbritten was the only witness to the location and characteristics of the fire.
The Allbrittens collected $300,000 under their hull insurance policy with U.S. Fire, and $3,000 under their homeowner's insurance policy with State Farm. On June 3, 1986, the Allbrittens filed an action against Cummins Alabama, A-1 Marine, and others, seeking damages for their loss of the Sea Gwen. On February 5, 1987, the Allbrittens amended their complaint to add State Farm and U.S. Fire as parties plaintiff, as each insurer sought to recover the insurance payments they had made pursuant to their subrogation rights.
Prior to trial, appellees entered into settlement agreements with all defendants except Cummins Alabama and A-1 Marine. A seven-day jury trial ensued. Appellees' case was based on their theory that the fire was caused by a leak in the fuel delivery system on the port-side engine, due to either an inherent design defect or the negligence of Cummins Alabama's mechanics in removing and replacing the fuel pump just prior to delivery of the boat, or both. This latter work allegedly caused a crack in the fuel line or fittings, and the alleged crack supposedly allowed diesel fuel to spray out from the fuel line, up and over the engine, and down onto a quarter-inch circular exposed portion of the hot turbocharger. In defense, Cummins Alabama presented the testimony of fire experts who rejected appellees' theory as being inconsistent with the known physical facts, and attempted to impeach Billy Allbritten's trial testimony with prior inconsistent statements. Cummins Alabama theorized that the fire was caused by a defect in the exhaust system supplied and installed by the builder, A-1 Marine.
On November 17, 1987 the jury returned a verdict exonerating Cummins Alabama but finding A-1 Marine liable to plaintiffs in the amount of $395,000. A-1 Marine did not seek post-judgment relief. On November 30, 1987, the Monday following Thanks-giving, appellees served Cummins Alabama with a copy of their motion for new trial. On January 5, 1988, Cummins Alabama filed its motion to strike appellees' motion for new trial as untimely, arguing that the motion for new trial should have been served on counsel no later than Friday, November 27, 1987, to comply with the requirements of Rules 1.530(b) and 1.090(a), Fla.R.Civ.P. On January 25, 1988 the court granted the motion for new trial. On February 5, 1988, the court entered its order denying Cummins Alabama's motion to strike without explanation.

*261 II.
We first address appellant's contention that appellees' motion for new trial was not timely filed. Rule 1.530, Fla.R.Civ.P. (1987), requires that a "motion for new trial or for rehearing shall be served not later than 10 days after the return of the verdict in a jury action... ." This rule must be read in conjunction with Rule 1.090(a), Fla.R.Civ.P. (1987):
In computing any period of time prescribed or allowed by these rules, by order of court or by any applicable statute, the day of the act, event or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included unless it is a Saturday, Sunday or legal holiday in which event the period shall run until the end of the next day which is neither a Saturday, Sunday or legal holiday.... [Emphasis added.]
The timeliness of the subject motion for new trial turns on the proper construction of the term "legal holiday" as used in Rule 1.090(a). The parties agree that the office of the clerk of the fourth judicial circuit was closed for a holiday on November 27, 1987, the Friday after Thanksgiving. But appellant, citing Flack v. Carter, 392 So.2d 37 (Fla. 1st DCA 1980), contends that the closure of the clerk's office is not dispositive of whether the day in question was a legal holiday within the meaning of that rule. Appellant argues that Flack makes clear that the term "legal holiday" as used in Rule 1.090(a) is to be interpreted solely by reference to the statutory definition of "legal holiday" found in section 683.01, Florida Statutes (1987). Since section 683.01 does not list the Friday after Thanksgiving as a legal holiday, appellant says that the motion should have been filed on or before that date. This means, in effect, that the motion had to be filed on the Wednesday immediately preceding Thanksgiving. Appellees, however, cite Cassas v. Lazan, 488 So.2d 671 (Fla. 4th DCA 1986), wherein the fourth district found that the day after Thanksgiving was a "legal holiday" contemplated by Rule 1.090(a), as authority for extending the time for filing the motion for new trial to the following Monday, the first day the clerk's office was open for business after Thanksgiving.
In determining the intent of Rule 1.090(a) with respect to legal holidays, we must examine not only the relevant statutory provisions but the rules promulgated by the supreme court as well. The Supreme Court of Florida has the exclusive power to prescribe rules for the practice and procedure in Florida courts. Bluesten v. Florida Real Estate Comm'n, 125 So.2d 567 (Fla. 1960). Necessarily included is the power to designate legal holidays for state courts. Of course, both the court rules and the statutory provisions relating to legal holidays should be harmonized to the maximum extent possible, but any conflict between the rules and statutory provisions must be resolved in favor of the supreme court provisions in respect to the courts.
In 1978 the supreme court promulgated, pursuant to its rule-making power, a Personnel Regulations Manual which became binding on all courts of this state. Section 4.07A of that manual sets forth the legal holidays to be observed by the courts, and specifically lists the "Friday after Thanksgiving" as a holiday to be observed by all Florida state courts, circuits, and support offices. These provisions are consistent with section 110.117(1)(g), Florida Statutes (1987), which defines "paid holidays" for state employees, and lists the "Friday after Thanksgiving" as a paid holiday to be "observed by all state branches and agencies." Section 683.01, Florida Statutes (1987), defines "legal holidays" in the sense of "public holidays" and sets Thanksgiving day as "the fourth Thursday in November"; but it is silent as to the Friday following Thanksgiving. The apparent inconsistency between section 683.01 and both section 110.117(1)(g) and section 4.07A of the supreme court's manual does not require a construction of rule 1.090(a) as embracing only the legal holidays described in section 683.01. On the contrary, any apparent inconsistency must yield to the supreme court's provisions for legal holidays in the court system. Common sense dictates that the rule of civil *262 procedure promulgated by the supreme court should not be construed as requiring a party to file papers with the clerk of the court on a day the clerk's office is legally closed pursuant to the supreme court's direction and authority. Thus, for the reasons stated in Cassas v. Lazan, 488 So.2d at 671, we likewise hold that November 27, 1987, the Friday after Thanksgiving, was a legal holiday under Rule 1.090(a), Fla.R. Civ.P. (1987).
There is no conflict between this holding and our previous decision in Flack v. Carter. Flack involved an election protest filed under section 102.166, Florida Statutes (1977). The Florida Rules of Civil Procedure do not govern such cases; but because the wording of the statute left doubt as to the timeliness of the protest, the court resorted to the provision in the civil rules for guidance in determining whether the protest was timely filed, and stated that the fact that the clerk of the court's office was closed on the date in question did not, "without more" make that date a legal holiday. Here, we obviously have "more."[1] The motion for new trial was timely filed, and we affirm the order denying the motion to strike.

III.
We now turn to the merits of the order granting a new trial. Rule 1.530, Fla.R.Civ.P., requires that an order granting a new trial must explicate the specific grounds on which it is based. See Wackenhut Corporation v. Canty, 359 So.2d 430 (Fla. 1978). In the order before us, the trial court recited four specific grounds that it found separately warranted a new trial, and then stated that the cumulative effect of these grounds, along with lesser assignments of error, also warranted a new trial. In reviewing this order, the standard of appellate review is whether the order amounts to an abuse of judicial discretion. Wackenhut Corporation v. Canty, 359 So.2d at 435.

A.
The first ground recited by the court was its finding that appellant's counsel made two impermissible golden rule arguments during his final argument. The first argument identified by the court was the statement of appellant's counsel, made while apologizing to the jury for the length of the trial and the complexity of the evidence, that:
Sometimes when I listen to it it puts me to sleep. I understand that, but I saw Mrs. Stiltner watching my diesel engine expert take that pump off, and I saw Mr. Boggess shake that line like I did, and I saw the reverend, Mrs. Smith 
(R. 2149). With reference to this statement, the court observed in the appealed order that appellant's counsel had identified individual jurors by name and had invited them to identify with the testimony and actions of appellant's experts during trial. The court noted that it had, sua sponte, terminated this argument and called counsel to sidebar, warning him to avoid anything personal in his remaining argument to the jury, and found that appellees' counsel had joined in the court's objection. The second argument of counsel referred to by the court consisted of the following:
I submit to you ladies and gentlemen of the jury there is no showing that these engines were defective. I submit to you that the Cummins Alabama people are not fire experts, they were in Panama City for a very limited purpose, and everything they did was reasonable. *263 I ask you only this, I ask you to analyze what they did and to judge them in light of what you would have done as reasonable people, in the circumstances they were in, given their job and their role, Cummins Alabama at the time.
(R. 2183). With regard to this argument, the court stated that appellant's counsel had again invited the jury to analyze appellant's actions in light of what they would have done in the same circumstances. The court further stated that both of these arguments "presented a probability of prejudice or improper influence in appealing to the sympathies of the jurors and in seeking to have the jurors identify with [appellant's] witnesses and with [appellant] itself as a party." (R. 755). In support of its conclusion that appellant made two impermissible golden rule arguments, the court cited Bullock v. Branch, 130 So.2d 74 (Fla. 1st DCA 1961), and Klein v. Herring, 347 So.2d 681 (Fla. 3d DCA 1977), as controlling and requiring a new trial.
A golden rule argument suggests to jurors that they put themselves in the shoes of one of the parties, and is impermissible because it encourages the jurors to decide the case on the basis of personal interest and bias rather than on the evidence. Schreidell v. Shoter, 500 So.2d 228 (Fla. 3d DCA 1986), rev. denied, 511 So.2d 299 (Fla. 1987); Miku v. Olmen, 193 So.2d 17 (Fla. 4th DCA 1966). While the first argument at issue does represent an improper attempt to curry favor with the jurors, it was not a golden rule argument because the jurors were not asked to assume the position of either party. In view of the court's intervention and restriction on further such argument, this comment was not sufficiently prejudicial to constitute harmful error warranting a new trial.
Counsel's second argument requested that the jurors analyze appellant's actions and judge appellant in light of what the jurors, themselves, would have done; but that request was couched in terms of the jurors' acting "as reasonable people." In light of this qualification, which is consistent with the reasonable person standard found in the standard jury instructions defining negligence, we are unable to conclude that the prohibition against a true golden rule argument was violated. See Shaffer v. Ward, 510 So.2d 602 (Fla. 5th DCA 1987) (trial court improperly granted new trial on basis that statements constituted golden rule argument where statements were merely an attempt to ask the jury to use their common, everyday experience in deciding the case). Furthermore, appellees failed to object and move for a mistrial or request a curative statement by the court when this argument was made. Schreidell v. Shoter, 500 So.2d 228. Even if appellant's comments were improper, they would not have constituted fundamental error warranting a new trial. See Shaffer v. Ward, 510 So.2d at 603.
Neither of these arguments constitutes a prohibited golden rule argument within the meaning of the cited cases of Bullock v. Branch, 130 So.2d 74, and Klein v. Herring, 347 So.2d 681, and neither argument was so egregious as to require a new trial. The trial court misapplied the law and abused its discretion in so ruling.

B.
The second ground of the appealed order recited that appellant violated an order in limine and that this violation prejudiced appellees' case. During trial appellees orally moved that appellant's witnesses be prohibited from testifying that "Cummins KTA-1150 engines have never burned before or this occurrence has never happened before." (R. 1605) The court granted this motion, stating on the record,
That will not be allowed to come in anymore (sic) than if they had 50 million failures. That's not the point. The point being I'm concerned with this engine, and this engine alone. Each engine is different.
That would be no different than an automobile or anything else because  now, you can't  what difference would it make if this engine had never had any failure before, period, or if not this engine, this model?
.....

*264 We're worried about this here alone and that's it.
(R. 1605). The discussion on the motion between the court and counsel continued for nine pages of transcript, and served only to further confuse the indefiniteness of the scope of the ruling in limine. (R. 1605-14).[2] The court entered no written order on the motion in limine setting forth the permissible or impermissible areas of inquiry.
The order granting new trial recited that appellant had violated the order in limine by allowing Mr. Calvert, its company representative, to testify that "in his experience with 10,000 Cummins' engines over twenty or thirty years he had never seen a problem of this type." (R. 755-756). The court also found certain deposition testimony of Mr. Weinhorst, one of appellant's expert witnesses, violated the order in limine because his opinion testimony was based on "the history of the engine." (R. 756). The court stated that the subject testimony prejudiced appellees because it lacked a properly-laid predicate, thus depriving appellees of the opportunity to question and cross-examine the witnesses, and because it was "a complete surprise to [appellees] for which [appellees] were not responsible." (R. 756-757).
Calvert's testimony found to violate the order in limine was given during his cross-examination in response to repeated questions by Allbritten's counsel, Beale, concerning whether a hole of any size in one of the metal fuel lines would cause the engine to atomize fuel. After Calvert adamantly expressed his reluctance to answer this question because the hypothetical facts given to him did not include the size of the hole or the pounds of pressure behind the hole, Mr. Calvert finally stated,
Mr. Beale, what I have a problem with at the current time is I have probably looked seriously in excess of 10,000 of our engines, well over that in my life time (sic). I have never seen a hole come in a fuel line or ruptured in our lines, and I never seen one of our engines spraying diesel fuel.
(R. 2086-2087). This testimony did not violate the order in limine. Rather, Calvert gave a legitimate response to the persistent questioning of appellee's counsel based on his personal experience. In any event, the testimony was not elicited by appellant but by appellees, who made no objection or motion to strike at the time. Appellees should not be heard post-trial to complain for the first time of a supposed violation of the order in limine that they induced.
Likewise, with regard to Mr. Weinhorst's testimony, the record shows that he based his opinion on his having worked on engines of the type involved for thirty-five years and on the engine's history known to him. No objection or motion to strike on grounds that his testimony violated the order in limine was made during trial. The *265 trial court did not state in its order in limine that appellant's witnesses could not answer questions on the basis of their personal experience, nor should it. Yet that is the framework within which these questions were asked and answered by Mr. Weinhorst. We find no record basis for concluding that the answers complained of were within the prohibition of the order in limine. The setting aside of a verdict must be supported by the record. Lasky v. Smith, 239 So.2d 13 (Fla. 1970). As this ground for the order is not supported by the record, it cannot support the setting aside of the verdict and grant of a new trial.

C.
The third ground upon which the court based the appealed order was its finding that remarks of appellant's counsel regarding the plaintiff insurance companies' status and purpose for joining in this trial constituted prejudicial error. The court stated that Levin v. Hanks, 356 So.2d 21 (Fla. 4th DCA 1978), controlled its decision on this issue and required a new trial.
In Levin, a boat accident case, the fourth district found a plaintiff insurance company was entitled to a new trial because the defendant had repeatedly argued to the jury that the insurance company was trying to recover a second time after having previously collected insurance premiums from the boat owner. The court found the purport of the remarks to be that the insurance company was attempting to make a double recovery. Nothing like that is involved in the instant case. The record reveals that appellant's counsel stated that the appellee insurance companies were making a "thin-veil attempt to find somebody to get their money back from," "were trying to get their money back," and were "trying to have their cake and eat it, too." These statements, unlike those at issue in Levin, did not express or imply that the insurance companies were trying to improperly effect a double recovery. Rather, the remarks were consistent with appellant's contention that appellees attempt to pin responsibility for the fire on a financially responsible defendant was weak and unsupported and being done solely to reach a deep pocket. The appellee insurance companies were real parties in interest and were accorded status as plaintiffs because they were exercising their rights of subrogation against third parties potentially responsible for the loss they paid pursuant to their insurance policies. The position and interest of the insurance companies as parties to the litigation was properly revealed to the jury, and this was so noted in the appealed order. We are unable to find the quoted remarks of counsel improper under the holding in Levin, and therefore conclude that this stated ground likewise does not support the award of a new trial.

D.
The fourth ground of the appealed order recited that the court had improperly excluded from evidence a U.S. Coast Guard report and four National Transportation Safety Board (NTSB) reports that appellees had offered during trial, and that this exclusion was so prejudicial as to mandate a new trial. The reports dealt with other reported ship fires originating at the engines. The order stated that the reports were excluded because the court had been erroneously persuaded that they were "improper evidence of past ship fires offered without the necessary predicate to show that the prior fires were substantially identical or similar in type and circumstances to the fire in the instant case." (R. 758). The court went on to state that upon further consideration of this issue, it found that the reports were not offered by appellees as evidence of prior similar incidents, but were offered in direct rebuttal to appellant's evidence that a ship fire could not be started by the leaking or spraying of diesel fuel on hot engine parts. (R. 758). The court concluded that the reports were relevant and material to rebut this testimony and that exclusion of these reports was highly prejudicial to appellees' case. (R. 758-759).
Although appellees contend, and the court's order recites, that these records should have been admitted to directly rebut *266 the testimony of appellant's expert witnesses that diesel fuel sprayed on a hot engine part cannot ignite and start a fire, we have been unable to find in this record the specific expert testimony that a fire cannot, under any circumstances, occur when diesel fuel is sprayed on a hot engine part.[3] As the trial court first ruled, this evidence was admissible only upon a showing of substantial similarity between the fire at issue and the fires referred to in the reports. Appellees did not lay such a predicate, and the trial court's initial ruling excluding the reports was correct. Moreover, we cannot overlook the fact that the substance of most of these reports was received in evidence and made known to the jury through the oral testimony of appellees' expert witnesses. This fourth ground is not supported by the record and does not warrant granting a new trial.

E.
Last, we address the finding in the appealed order that the cumulative effect of these errors and others warranted the granting of a new trial. But, as already noted, the four specific grounds recited in the order are not supported by the record and will not support the order. No other specific errors during trial have been noted. We are compelled to conclude, therefore, that the recited ground of cumulative error requiring a new trial is likewise not supported on this record. Lasky v. Smith, 239 So.2d 13 (Fla. 1970).
Our review of the record revealed ample evidence supporting the jury's conclusion that the flexible exhaust, not the spraying of diesel fuel, caused the fire on this boat. The trial court accorded the parties a fair trial of the issues in a lengthy, hotly disputed trial without harmful error that we can find. Despite his second thoughts post-trial that appellees may not have received a fair trial, the record does not support the recited grounds for new trial, and the order granting a new trial must be reversed as an abuse of discretion. The cause is remanded with directions to enter final judgment on the jury verdict in favor of appellant Cummins Alabama.
REVERSED AND REMANDED.
BARFIELD, J., concurs.
SHIVERS, C.J., concurs in part, dissents in part, with written opinion.
SHIVERS, Chief Judge, concurring in part and dissenting in part.
I agree that the motion for new trial was timely filed. However, I would affirm the order granting a new trial. The trial court's discretion is broad in this regard. One attacking an order granting a new trial has to meet the very heavy burden of showing that the judge's action was arbitrary, fanciful or unreasonable. Weems v. Dawson, 352 So.2d 1196 (Fla. 4th DCA), cert. den., 359 So.2d 1221 (Fla. 1977). In my opinion the trial court did not abuse its discretion.
NOTES
[1] Section 110.117, Florida Statutes, enacted in 1979, was not in effect at the time of the filing at issue in Flack. Had it been, the court undoubtedly would have observed that subsection (i) provides that if any of the listed holidays falls on a Saturday, the preceding Friday shall be observed as a holiday. November 10, 1978, the date at issue in Flack, thus would have been considered a legal holiday pursuant to section 110.117(1)(i) because the designated holiday honoring Veteran's Day, November 11, fell on a Saturday that year.

Moreover, the court in Flack did not appear to be aware of the supreme court's manual fixing certain holidays to be observed by the circuits, which included a provision that holidays falling on a Saturday would be observed on the preceding Friday.
[2] For example, the trial judge stated at various times during this ensuing discussion:

THE COURT: I'll let your man [Cummins Alabama's] testify that if you take it off, in his opinion, it wouldn't cause a crack or otherwise.
I'll let him testify he's never seen a crack or otherwise, and it never happened to him. I don't otherwise, and it never happened to him. I don't know, unless you've got  you don't have your corporate records or anything else for Cummins Engine Manufacturing that you've had complaints on it. (R. 1610).
* * * * * *
THE COURT: I'll let your man testify that he has never, in taking them off, he hadn't done it.
But as far as bringing in records showing that there's never been a failure, no, or he doesn't know. He can testify to his experience in working with that type engine that he has never seen  he's never caused a fuel leak. (R. 1611).
* * * * * *
THE COURT: I'll let him testify if he installed these engines in boats, taking  if he's taken the thing off.
He can  you all, Mr. Beale's client, I mean, expert opened up the thing by saying there was a design defect, but I'm not going to let them go into  I'll let this man testify he put the thing on. He took it off. He didn't 
MR. PARRISH [counsel for Cummins Alabama]: As if he's done that before.
THE COURT: He's done that before on similar vessels that he's never caused or seen or tried  I'm not going to let him testify that this never happened before because I don't  (R. 1611-12).
[3] We encountered a great deal of difficulty in reviewing this point because appellees failed to provide the court with record citations to the testimony the evidence was introduced to rebut.