374 So.2d 77 (1979)
Nelson LLOMPART, Etc., et al., Appellants,
v.
Donald LAVECCHIA et al., Appellees.
No. 78-1983.
District Court of Appeal of Florida, Third District.
July 31, 1979.
Rehearing Denied September 10, 1979.
*78 Joe N. Unger, Robert M. Sussman, Miami, for appellants.
Blackwell, Walker, Gray, Powers, Flick & Hoehl and James E. Tribble, Miami, for appellees.
Before PEARSON, HENDRY and HUBBART, JJ.
PER CURIAM.
This is an appeal by the plaintiffs from a final judgment, based on a jury verdict, finding certain defendants one hundred percent negligent and awarding $10,830 to plaintiff Nelson Llompart, and $5,630 to his wife, plaintiff Elia Llompart.
The sole issue on appeal, arising from the plaintiffs' contention that the damages awarded were inadequate, involves the alleged error of the trial judge in refusing to charge the jury, as requested by the plaintiffs, on aggravation or activation of disease or defect as an element of damages. The facts recited will be limited to those which go to the entitlement to this charge and the claimed error in its refusal.
By its verdict, the jury determined that the damages suffered by plaintiff Nelson Llompart were caused by the negligence of the operator of the vehicle in which he was a passenger and, vicariously, by the vehicle operator's employer, the owner of the vehicle, and the insurer. A multi-car accident was the cause of Mr. Llompart's injury. For purposes of this appeal, it is unnecessary to delineate further the circumstances of the accident or the determination of the jury concerning which of the defendants were liable for Llompart's injuries and which were not.
The evidence revealed that before the accident the plaintiff was a wage-earning, functional human being but that, by his bizarre behavior, he showed an abnormal mental adjustment to life.
The testimony that is claimed to have raised the issue upon which the plaintiffs were entitled to the refused instruction is that of Drs. Charles Mutter and Hector Sanchez, both psychiatrists. Dr. Mutter did not see the plaintiff before the accident, but testified that he had evaluated him psychiatrically on September 23, 1976. At that time, Llompart was mute and unable to communicate. The history Dr. Mutter received from Mrs. Llompart was that after her husband was injured in the collision, he was taken to Hialeah Hospital and was bleeding from his right ear and had to undergo surgery. After leaving the hospital, he started acting strangely and became very nervous, very sensitive to noises, afraid to be in a car, and afraid that the slightest noise meant something was going to happen to him. He became more withdrawn, refused to communicate or talk to other people, and became progressively worse. He began to see or hear things which no one else saw or heard.
*79 As time passed, Llompart refused to bathe himself, would not take care of himself, clung to his wife, wouldn't leave her side, and had to be fed by her. From the time of the accident, he became so withdrawn that he would not speak or communicate with anyone. Not only had he become uncommunicative, but also inactive sexually and totally withdrawn.
After receiving Llompart's history and giving him an examination, Dr. Mutter diagnosed him as having "post-traumatic psychosis, ... schizophrenia, ... a major medical disorder." The psychosis was defined as "insanity, acutely mentally ill."
Dr. Mutter, like Dr. Sanchez, who also testified, was of the opinion that the plaintiff's symptoms were such that they could have been caused by the injury sustained. In speaking of the accident, he said, "I would say it would be a trigger." For his part, Dr. Sanchez testified that in his opinion, there would "have to be a direct relation" between the accident and subsequent behavior because Llompart "wasn't that way" before the accident, but rather "was a hard working man."
There was contrary evidence from Dr. Paul Jarrett, a psychiatrist produced by the defendants, who testified that Llompart had sustained no organic brain damage. In a hypothetical question put to Dr. Jarrett, defendants' counsel described Llompart as withdrawn, clinging to his wife with his head buried in her shoulder, unshaven, having hair down below his shoulders, speaking very little, having to be washed and fed by his wife, and regressing to an infantile state. In Dr. Jarrett's opinion, the automobile accident of September 3, 1975, had no connection with this subsequent behavior, and the type of injury sustained did not produce a behavioral change of the sort described as undergone by the plaintiff.
At the charge conference, counsel for the plaintiffs requested that the jury be instructed in accordance with Florida Standard Jury Instruction 6.2b, which is as follows:
"Any aggravation of an existing disease or physical defect [or activation of any such latent condition], resulting from such injury. If you find that there was such an aggravation, you should determine, if you can, what portion of (claimant's) condition resulted from the aggravation and make allowance in your verdict only for the aggravation. However, if you cannot make that determination or if it cannot be said that the condition would have existed apart from the injury, you should consider and make allowance in your verdict for the entire condition."
A requested written charge was presented and refused. The jury was, however, charged that if it should find for the plaintiffs on the issue of liability, it should determine in dollars the total amount of the loss, injury or damages sustained as a result of the incident complained of, including any such damage as reasonably could be said to be incurred in the future.
The jury was to consider the following elements: "any bodily injury ... and any resulting pain and suffering, disability, disfigurement, mental anguish and loss of capacity for the enjoyment of life experienced in the past or to be experienced in the future." The judge also instructed the jury that it should consider the reasonable value or expense of hospitalization and medical care and treatment necessary or reasonably obtained in the past or to be obtained in the future.
The question thus presented is whether it was prejudicial error for the trial judge to deny the plaintiffs' motion for a new trial grounded upon the position that the jury was not properly instructed on damages because of the court's refusal to give the requested charge and, as a result thereof, that an inadequate verdict was rendered. In order to decide this question, it is necessary to determine the rules of practice found to be applicable by the Florida courts.
We take it that the general rule is that in order to obtain reversal for the failure to give a requested instruction, it must be demonstrated that the requested instruction was necessary for a proper determination *80 of the case. In other words, reversal will not be required where the subject of the instruction is covered in other charges given by the court or where failure to give the instruction is not shown to be prejudicial. See Florida East Coast Railway Company v. Lawler, 151 So.2d 852 (Fla.3d DCA 1963); see also the principles of law in Yacker v. Teitch, 330 So.2d 828 (Fla.3d DCA 1976); Menard v. O'Malley, 327 So.2d 905 (Fla.3d DCA 1976); and see City of Jacksonville v. Vaughn, 92 Fla. 339, 110 So. 529 (1926).
In making this determination, the right of a party to have the jury instructed from the law applicable to his reasonable theory of the case must be borne in mind. See Luster v. Moore, 78 So.2d 87 (Fla. 1955); Sequin v. Hauser Motor Co., 350 So.2d 1089 (Fla.4th DCA 1977); and Duncan v. Laney, 202 So.2d 793 (Fla.2d DCA 1967). This rule is further qualified by the fact that the issues upon which instructions are required are those formulated by the pleadings and presented by the evidence. See Hutchins & Co. v. Sherman, 82 Fla. 167, 89 So. 430 (1921). An overall test that is often applied is that in passing on the refusal of a single instruction, an appellate court will examine the entire charge to the jury and, if it determines that the law has been fairly presented to the jury, the judgment will be affirmed. See Yacker v. Teitch, 330 So.2d 828 (Fla.3d DCA 1976), and authorities cited therein.
With these concurrent tests in mind, we have examined the record in this case and find that the issue of aggravation of an existing injury was not directly presented to the jury. The pleadings in the plaintiffs' case were based on a direct causal relationship between Llompart's physical injuries resulting from the accident caused by the defendants' negligence and his pre-trial mental and physical condition. The Llomparts presented their evidence on this basis. The element of a pre-existing injury was introduced by the defendants, in rebuttal to plaintiffs' contention that Llompart's condition was caused by the accident, when they showed a continuing course of conduct over many years from which the jury could reasonably conclude that Llompart's condition immediately prior to trial was a natural result of the development of a disease which was engendered or began many years ago. Thus, the defendants' evidence was relevant to the defense of the issue presented by the complaint and by the evidence presented at trial.
Any evidence on "aggravation" must be gleaned from a reading of the evidence in the light of the testimony of the three psychiatrists. It will be recalled that the psychiatric evidence was initiated by the opinion of the plaintiffs' witness, Dr. Mutter, that Llompart's mental condition arose from a triggering action of a previously-existing "propensity" for the injury (although no prior "injury" existed), and that growing out of these circumstances, the injury resulting from the accident caused the condition.
On the other hand, the evidence of the defendants' psychiatrist indicated a pre-existing condition having no relationship to the accident. Under these circumstances, we do not think that the court committed reversible error in refusing to give an instruction on aggravation of a pre-existing injury. Accordingly, the persuasive principle upon which this case is decided is that the issue of aggravation of a pre-existing injury not having been clearly presented to the jury and the jury having been fully and carefully instructed upon the law applicable to the case, the failure to give the instruction will not be grounds for reversal for a new trial. See Fournier v. Lott, 145 So.2d 885 (Fla.3d DCA 1962), and cases cited therein. It must be remembered that the plaintiffs recovered a verdict at the hands of the jury. Thus, it is clear that the jury found a causal connection between the accident and some of Llompart's injuries. Thus, they proceeded upon the theory of the case framed by the complaint and the evidence presented at the trial. The plaintiffs cannot now be heard to argue that they should have been allowed to proceed upon an alternate theory which was not formulated in the trial court.
Affirmed.