800 So.2d 359 (2001)
Janice BROWN and Diana Trost, Appellants,
v.
Bonnie A. BROWN, Appellee.
No. 4D01-603.
District Court of Appeal of Florida, Fourth District.
November 28, 2001.
*360 George W. Bush, Jr., and Lara L. Douglass of Bush & Donlon, P.A., Palm Beach Gardens, for appellants.
Michael J. Mortell of Lewis, Mortell & Lewis, LLC, Stuart, for appellee.
STEVENSON, J.
A jury found Janice Brown and Diana Trost liable to Bonnie Brown for damages on the claims of intentional interference with a custodial parent-child relationship and intentional infliction of emotional distress. We reverse because the trial judge erred both in failing to instruct the jury on the affirmative defenses relating to the tort of intentional interference with a custodial parent-child relationship and in giving incomplete jury instructions on the claim of intentional infliction of emotional distress.

The testimony at trial
Due to behavioral problems with her son, Alex, Bonnie Brown placed him in a residential treatment program called Growing Together. When Alex's father, Keith Brown, found out about Alex's placement in the program, he and his wife, Janice Brown, took Alex out of the program. Consequently, Bonnie Brown went to court and obtained an order giving her sole authority to place Alex in the program. The order was dated October 1, 1998, and on October 2, Bonnie Brown *361 picked up Alex and took him back to Growing Together.
On December 17, 1998, Alex left the program and called his step-mother, Janice Brown, who picked him up and took him to a relative's house. Alex told Janice Brown that Growing Together was "a real bad place" and that he was not going back. Alex also stayed with his Aunt Diana Trost in North Carolina. He told her that he hated Growing Together and that they "drugged him up" and "he went from house to house" and "they locked him up in different rooms." Alex said that if he were taken back to Growing Together, he would run away and live on the streets.
Bonnie Brown testified that she hired a private investigator to find Alex and that she could not sleep, eat, or work because she was so upset that she could not find her son. Bonnie Brown filed a motion of contempt against Keith Brown because she believed he knew where Alex was located. When Keith Brown showed Janice Brown the motion, she told him that Alex was with Diana Trost. They immediately went to North Carolina, picked him up, and returned him to Growing Together. Alex had been missing for twenty-three days.

The verdict
Bonnie Brown brought claims against Janice Brown and Diana Trost for intentional infliction of emotional distress and intentional interference with a parent-child relationship. The case went to trial in November of 2000 and was bifurcated into a liability and compensatory damages portion and a punitive damages portion. The jury found that Janice Brown and Diana Trost were liable to Bonnie Brown for damages on both claims. Bonnie Brown was awarded $68,568.31 in damages recoverable from Janice Brown and Diana Trost, jointly and severally. Additionally, the jury assessed $100,000 in punitive damages against Janice Brown and $42,000 against Diana Trost.

Tortious Interference with a Custodial Parent-Child Relationship
In Stone v. Wall, 734 So.2d 1038 (Fla. 1999), a case of first impression, the Florida Supreme Court held that the common law cause of action for intentional interference with the custodial parent-child relationship by a third party non-parent would be judicially recognized in Florida. "We find that present day conceptions of right and justice compel us to join the overwhelming majority of jurisdictions that have, through decisional law, recognized this common law tort." Id. at 1047. The court went on to explain the elements of this newly recognized cause of action:
Most often referred to as "interference with child custody" or "intentional abduction of a child" or by some other version of such terms, this cause of action has been the subject of recent scholarly discussion. However, as early as 1938, the tort was included in the American Law Institute's first Restatement of Torts. See Restatement of Torts, § 700 (1938). The most recent version, Restatement of Torts (Second) § 700 (1977), provides the common law cause of action with its contemporary definition:
One who, with knowledge that the parent does not consent, abducts or otherwise compels or induces a minor child to leave a parent legally entitled to its custody or not to return to the parent after it has been left him, is subject to liability to the parent.
734 So.2d at 1041-42 (footnotes omitted).
At the conclusion of the trial in the instant case, appellants requested jury instructions for the claim of intentional interference with a custodial parent-child relationship, which included affirmative defenses. Appellants' proposed jury instructions *362 on the affirmative defenses would have required the jury to indicate whether the defendants' actions were "to prevent physical harm to Alex Brown" and whether the defendants possessed "a reasonable good faith belief that [the] interference was proper." Appellee argued that the affirmative defenses were not available in Florida, and the trial judge agreed and opted to read appellee's jury instructions which did not contain the affirmative defenses.
We readily agree with appellants' argument that the Stone court, in adopting the cause of action for intentional interference with a custodial parent-child relationship, also adopted the well-recognized, affirmative defenses discussed in the opinion. To reach this conclusion, we need look no further than the language of the opinion itself. Immediately after describing the elements of the cause of action, the court approvingly wrote:
It is a defense to the cause of action that the plaintiff did not have superior custodial rights, that the defendant took the child to prevent physical harm to the child, or that the defendant "possessed a reasonable, good faith belief that the interference was proper." Kessel [v. Leavitt, 204 W.Va. 95, 511 S.E.2d 720, 766 (1998), cert. denied, 525 U.S. 1142, 119 S.Ct. 1035, 143 L.Ed.2d 43 (1999) ].
Stone, 734 So.2d at 1042. Since the affirmative defenses discussed above are applicable to a claim of intentional interference with a custodial parent-child relationship in Florida and the evidence could have supported the jury's application of those affirmative defenses, it was error for the trial judge to deny appellants' requested jury instructions, including these defenses.[1]See Schreidell v. Shoter, 500 So.2d 228, 231 (Fla. 3d DCA 1986)(citing Davis v. Charter Mortgage Co., 385 So.2d 1173, 1174 (Fla. 4th DCA 1980)), rev. denied, 511 So.2d 299 (Fla.1987).

Jury Instruction for Intentional Infliction of Emotional Distress
We also agree with appellants' argument that the jury instructions given by the trial judge failed to accurately present the elements of a claim for intentional infliction of emotional distress. At appellee's request, the trial judge submitted the following instructions to the jury:
The first issue for your determination on the claims of Plaintiff, BONNIE BROWN, against JANICE BROWN, on account of the acts of JANICE BROWN is:
Whether the Defendant, JANICE BROWN, without cause, provocation, or encouragement or inducement by BONNIE BROWN, took the minor child, ALEX BROWN and placed him in hiding against the Plaintiff, BONNIE BROWN's will; and
Whether the Defendant, JANICE BROWN knew or had reason to believe that her actions would cause emotional harm to BONNIE BROWN.
The elements of a claim for intentional infliction of emotional distress have frequently been outlined in the case law:
(1) the wrongdoer's conduct was intentional or reckless, that is, he intended his behavior when he knew or should have known that emotional distress would likely result;
(2) the conduct was outrageous, that is, as to go beyond all bounds of decency, and to be regarded as odious and utterly intolerable in a civilized community;

*363 (3) the conduct caused emotional distress; and
(4) the emotional distress was severe.
Clemente v. Horne, 707 So.2d 865, 866 (Fla. 3d DCA 1998)(citing Dominguez v. Equitable Life Assurance Soc'y of U.S., 438 So.2d 58, 59 (Fla. 3d DCA 1983)); see also State Farm Mut. Auto. Ins. Co. v. Novotny, 657 So.2d 1210, 1212 (Fla. 5th DCA 1995); Food Lion, Inc. v. Clifford, 629 So.2d 201, 202 (Fla. 5th DCA 1993).
The jury instructions given in the instant case did not state that the conduct was required to be outrageous and the emotional distress severe. Consequently, the submitted instructions failed to address material elements of the tort and presented the jury with a "watered-down" concept of the cause of action. See Schreidell, 500 So.2d at 231 (citing Tilley v. Broward Hosp. Dist., 458 So.2d 817 (Fla. 4th DCA 1984); Llompart v. Lavecchia, 374 So.2d 77, 80 (Fla. 3d DCA 1979)). Accordingly, we hold that the trial judge erred in failing to give appellants' requested instructions sufficiently covering all the elements of a claim for intentional infliction of emotional distress.
We reverse and remand for a new trial consistent with this court's opinion, and find it unnecessary to discuss any other issues raised on appeal.
REVERSED and REMANDED.
STONE, J., and CLARK, NIKKI ANN, Associate Judge, concur.
NOTES
[1] Appellee argued that appellants' requested jury instructions were not timely filed. We are convinced by the record, however, that the trial judge did not deny the instructions on that basis.