DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ROBERT GLEGG,**
Appellant,

v.

**KATALIN VAN DEN HURK** and **RICHARD PEACEY,**
Appellees.

No. 4D2023-0026

[January 10, 2024]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Martin J. Bidwill, Judge; L.T. Case No. CACE18017682.

Laura M. Arcaro of the Arcaro Law Group, P.A., Fort Lauderdale, for appellant.

C. Edward McGee, Jr., of McGee & Huskey, P.A., Fort Lauderdale, for appellees.

KLINGENSMITH, C.J.

Appellant Robert Glegg ("the Father") brought tort claims in a civil action in civil court against appellees Katalin Van Den Hurk ("the Mother") and Richard Peacey ("the Stepfather") alleging intentional interference with custodial rights and intentional infliction of emotional distress (IIED) against both in a dispute stemming from the custody of their then-teenage daughter.[1] The trial court entered final summary judgment in favor of the appellees on both counts, and the Father now appeals. We affirm the summary judgment in favor of the Mother without comment. *See Stone v. Wall*, 734 So. 2d 1038, 1047 (Fla. 1999). For the reasons set forth below, we also affirm summary judgment in favor of the Stepfather.

Relating to the Stepfather, the allegations centered around his alleged conspiracy with the Mother's failure to force the daughter to return to Canada and back to the Father's custody against the daughter's adamant wishes to remain in Florida. The Father describes this conspiracy as an

---

[1] In 2016, the daughter was granted the right to withdraw from parental control by an Ontario court.

"international kidnapping." Relating to the Stepfather, the conspiracy as alleged included the Stepfather's failure to prevent the daughter's enrollment in a Florida high school, and his acquiescence and failure to intervene in the daughter's and the Mother's plans. This included allowing the daughter to stay in his home, driving the daughter to attend classes after enrolling in her Florida high school, allowing the purchase of the daughter's school supplies and uniforms, and failing to intervene as the daughter pursued early admission to attend the University of Miami. The Father also accuses the Stepfather of assisting the Mother in allegedly persuading the daughter to obtain her emancipation from the Father in Canada.

The standard of review for an entry of summary judgment is *de novo. Volusia County v. Aberdeen at Ormond Beach, L.P.*, 760 So. 2d 126, 130 (Fla. 2000). Under Florida Rule of Civil Procedure 1.510(a), the summary judgment standard mirrors the standard for directed verdict; the focus of the analysis is whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Mane FL Corp. v. Beckman*, 355 So. 3d 418, 425 (Fla. 4th DCA 2023) (quoting *In re Amends. to Fla. R. Civ. P. 1.510*, 317 So. 3d 72, 75 (Fla. 2021)).

Florida recognizes a cause of action for the tortious interference of a parent's custodial rights but only in the context of a parent suing a third-party for such interference. *See Stone*, 734 So. 2d at 1039. As aptly noted by Judge Gross, when the purported interference is by a co-parent, "the family court is better suited than the civil court to address such issues. In the time that a defendant in a civil suit has to file a motion to dismiss, a family court judge can hold a hearing, take evidence, and fashion a remedy." *Davis v. Hilton*, 780 So. 2d 974, 977 (Fla. 4th DCA 2001) (Gross, J., concurring specially). Further, family courts have "remedial tools" that civil courts do not have that can address custody issues between parents "before it festers into a problem beyond control." *Id.* In keeping with the rationale set forth in *Stone* and *Davis*, we hold that such tort claims by one parent against another should be brought in the family courts, not the civil courts.

In contrast, the Father was entitled to bring his tortious interference action in civil court against any person like the Stepfather who is a third party to the parent-child relationship. But to prove a claim for intentional interference of custodial rights, a plaintiff must show:

(1) the complaining parent has a right to establish or maintain a parental or custodial relationship with his/her minor child;
(2) a party outside of the relationship between the complaining

2

> parent and his/her child intentionally interfered with the complaining parent's parental or custodial relationship with his/her child by removing or detaining the child from returning to the complaining parent, without that parent's consent, or by otherwise preventing the complaining parent from exercising his/her parental or custodial rights; (3) the outside party's intentional interference caused harm to the complaining parent's parental or custodial relationship with his/her child; and (4) damages resulted from such interference.

*Stone*, 734 So. 2d at 1042.

We agree with the trial court that the record was devoid of any evidence supporting the Father's claim on the custodial interference count against the Stepfather. The Stepfather was not involved in the relationship between the daughter and her parents and he left all decisions relating to custody and the daughter's residence to her parents. The Stepfather's alleged conduct, including providing housing and transportation for the daughter or failing to intervene in the Mother's relationship with the daughter, simply does not constitute intentional interference with the Father's parental or custodial relationship with the daughter. As explained in *Stone*, the custodial interference tort typically requires more tortious conduct than the Stepfather is alleged to have committed here. *See id.* at 1043.

Similarly, the Father's IIED claim against the Stepfather also fails because the record evidence does not pass the high threshold for IIED claims under Florida law. To support a claim for IIED, a plaintiff must prove:

> (1) the wrongdoer's conduct was intentional or reckless, that is, he intended his behavior when he knew or should have known that emotional distress would likely result;
> (2) the conduct was outrageous, that is, as to go beyond all bounds of decency, and to be regarded as odious and utterly intolerable in a civilized community;
> (3) the conduct caused emotional distress; and
> (4) the emotional distress was severe.

*Brown v. Brown*, 800 So. 2d 359, 362–63 (Fla. 4th DCA 2001) (quoting *Clemente v. Horne*, 707 So. 2d 865, 866 (Fla. 3d DCA 1998)); *see also Mellette v. Trinity Mem'l Cemetery, Inc.*, 95 So. 3d 1043, 1048 (Fla. 2d DCA 2012) (quoting *Gallogly v. Rodriguez*, 970 So. 2d 470, 471 (Fla. 2d DCA

2007)).  The question of whether conduct is sufficiently outrageous enough to support an IIED claim is a question of law, not a question of fact.  *Baker v. Fla. Nat'l Bank*, 559 So. 2d 284, 287 (Fla. 4th DCA 1990).  While the Father wildly exaggerates when describing the Stepfather's conduct as a conspiracy to "kidnapping," courts do not focus on the alleged victim's subjective response to, or description of, the actor's conduct.  *See Liberty Mut. Ins. Co. v. Steadman*, 968 So. 2d 592, 595 (Fla. 2d DCA 2007).  Based on a review of the record, the Stepfather's actions and inactions are nowhere near the level of "outrageous" conduct necessary to establish an IIED claim under Florida law.  *See Escadote I Corp. v. Ocean Three Condo. Ass'n, Inc.*, 307 So. 3d 938, 943 (Fla. 3d DCA 2020) (affirming summary judgment on the plaintiff's IIED claim because the record did not contain any evidence sustaining the claim).

Therefore, the trial court's final summary judgment in favor of appellees was proper.

*Affirmed.*

GROSS and LEVINE, JJ., concur.

*          *          *

**_Not final until disposition of timely filed motion for rehearing._**

4