EMAS, J.
Raul Diaz was arrested and charged with assault of his stepdaughter, resisting an officer with violence, and battery on a law enforcement officer. Following a trial, Diaz was convicted of the three crimes charged. Diaz appeals from his conviction, and, for the reasons that follow, we affirm in part and reverse in part.
At trial, the State presented two 911 calls. In the first call, the caller (Diaz’s stepdaughter, Rachel Llerena) told the 911 operator that:
• Her stepfather had been drinking and was outside the house, throwing something at her car;
• Diaz was not armed;
• Llerena was inside the house and able to lock the doors; and
• No one in the house was in immediate danger.
The 911 operator told Llerena to remain in the house and that police were being dispatched. Approximately fifteen minutes later, Llerena called 911 again. In the second call, Llerena told the 911 operator:
• Her stepfather broke one of the windows to the house and was destroying her car outside;
• There were three people in the house: Llerena, Llerena’s mother and Llerena’s daughter;
• Her stepfather was drunk and threatening them, but the door to the house was locked and he was outside of the house;
• She did not believe that her stepfather had his house key in his possession;
*433 • Her stepfather said the police would have to kill him; and
• A weight which Diaz had earlier thrown at Llerena’s car was no longer outside of the house.
The State introduced into evidence pictures of the broken window, depicting a broken center pane with jagged glass. The State then called Officer Fernandez, who testified that she had spoken with Llerena at the time of the incident upon being dispatched to the house. Officer Fernandez identified the voice on the 911 calls as that of Rachel Llerena, Diaz’s stepdaughter. The statements made and events described by Llerena in the two 911 calls occurred prior to the police officers’ arrival on the scene.
Thereafter, the State and defense witnesses gave very different versions about the sequence of events that occurred upon the police officers’ arrival at the house. The State relied on the testimony of Officers Perez and Janvier who were dispatched separately to the house. The officers each testified that they approached the house together, and that Diaz was outside the house and began yelling at, and walking towards, the officers when they arrived. After a couple of requests for a pat-down, Diaz complied and put his hands on a parked car. Halfway through the pat-down, Diaz turned abruptly. A scuffle ensued and Diaz punched one of the officers. Diaz began to run and was eventually subdued with a taser. The officers did not take statements from any of the neighbors who had witnessed the incident.
Two of Diaz’s neighbors, Anna Alamo and Humberto Gonzalez, testified for the defense. They each testified that Diaz was by the front door talking to his wife (who was inside the house) when the police drove up to the scene. Diaz was not yelling, and nothing seemed out of the ordinary. Both Alamo and Gonzalez testified that only one police car — and only one officer — initially arrived at Diaz’s house. The defense witnesses said there did not appear to be any confrontation or shouting between Diaz and the first police officer. Diaz submitted to a pat-down, at which point a second police car arrived. Both witnesses testified that as soon as the second officer got out of his car, that officer began yelling at Diaz. Diaz turned toward the first officer and asked something in Spanish, to the effect of “what’s the matter with him?” The first officer stepped back and the second officer tased Diaz. Diaz did not run or scream, nor did he hit either of the officers. After Diaz was tased, the two officers took him to the ground. Alamo testified that the first officer refused her attempts to speak with him, and no officer ever interviewed her about what she had witnessed.
During closing argument, the defense emphasized that the sole evidence of the assault was the 911 recording and highlighted to the jury that no one from inside the house had testified at the trial. In rebuttal, the prosecutor argued that if Rachel Llerena had been present, she would have simply corroborated the things she said during the 911 call:
STATE: Now, I’ll ask you, if I had actually brought Rachel Llerena here today, how much stronger do you think the state’s case would have gotten? She would have told you exactly the same things that’s on the 911 call. Only the 911 call, I submit to you, is better because that’s her in the moment, it’s not her thinking on the witness stand. (Emphasis added).
The defense objected, noting that, by this argument, the State improperly told the jury that it knew what the witness would have done or said had she appeared and testified at trial. The court overruled the objection. After closing, the defense *434 moved for mistrial on the grounds that the prosecutor told the jury that a non-testifying witness would have corroborated the State’s case and evidence had she testified. The court denied the motion for mistrial. Subsequently, Diaz was convicted of assault, resisting an officer with violence, and battery on a law enforcement officer. This appeal followed.
A trial court’s rulings regarding the propriety of comments made during closing argument are reviewed for an abuse of discretion. Braddy v. State, 111 So.3d 810, 837 (Fla.2012)(citing Salazar v. State, 991 So.2d 364, 377 (Fla.2008)). The overruling of defense counsel’s objection to an improper prosecutorial argument that should have otherwise been sustained is reviewed for harmless error. Braddy, 111 So.3d at 837.
A “prosecutor must confine his/ her closing argument to evidence in the record and must not make comments which could not be reasonably inferred from the evidence.” Hazelwood v. State, 658 So.2d 1241, 1244 (Fla. 4th DCA 1995). He may not “suggest that evidence which was not presented at trial provides additional grounds for finding the defendant guilty.” Servis v. State, 855 So.2d 1190, 1194 (Fla. 5th DCA 2003). Further, it is improper for “a prosecutor [to] suggest during closing argument that there are other witnesses who would corroborate the state’s case had they been called to testify.” Hazelwood 658 So.2d at 1244. As the Florida Supreme Court previously acknowledged:
A criminal trial is a neutral arena wherein both sides place evidence for the jury’s consideration; the role of counsel in closing argument is to assist the jury in analyzing that evidence, not to obscure the jury’s view with personal opinion, emotion, and nonrecord evidence:
[[Image here]]
The role of the attorney in closing argument is “to assist the jury in analyzing, evaluating and applying the evidence. It is not for the purpose of permitting counsel to ‘testify’ as an ‘expert witness.’ The assistance permitted includes counsel’s right to state his contention as to the conclusions that the jury should draw from the evidence.” United States v. Morris, 568 F.2d 396, 401 (5th Cir.1978) (emphasis in original). To the extent an attorney’s closing argument ranges beyond these boundaries it is improper. Except to the extent he bases any opinion on the evidence in the case, he may not express his personal opinion on the merits of the case or the credibility of witnesses. Furthermore, he may not suggest that evidence which was not presented at trial provides additional grounds for finding defendant guilty.
It is particularly improper, even pernicious, for the prosecutor to seek to invoke his personal status as the government’s attorney or the sanction of the government itself as a basis for conviction of a criminal defendant.
The power and force of the government tend to impart an implicit stamp of believability to what the prosecutor says. That same power and force allow him, with a minimum of words, to impress on the jury that the government’s vast investigatory network, apart from the orderly machinery of the trial, knows that the accused is guilty or has non-judicially reached conclusions on relevant facts which tend to show he is guilty.
Ruiz v. State, 743 So.2d 1, 4 (Fla.1999)(quoting Hall v. United States, 419 F.2d 582, 583-84 (5th Cir.1969) and citing United States v. Garza, 608 F.2d 659, 662-62 (5th Cir.1979)).
*435 In the instant case, the State improperly argued that the non-testifying victim would have testified “to exactly the same things” she said in her 911 calls, and the trial court erred in overruling the objection to this improper argument. Though defense counsel’s argument in closing (that the 911 calls were the only evidence of the assault and the State failed to call any witness who was inside the house) may have opened the door to a fair reply, the State, in commenting on what a non-testifying witness[1] would have said and how that non-testifying witness would have corroborated its case, went beyond fair reply, went outside the evidence, and asked the jury to accept the prosecutor’s assurance that there existed extra-record evidence to corroborate that which the jury heard during the trial.[2]
On appeal, the State concedes that this argument was improper and that the objection should have been sustained; the State contends, however, that that the error was harmless. We do not agree. In this case, the two 911 calls served as the sole evidence to establish the assault charge. The prosecutor’s argument that Llerena, if called to testify, would have reaffirmed everything in those calls, was more than an improper comment on the accuracy and truthfulness of the contents of the 911 tape. It was an argument which reasonably would lead the jury to believe that there is other evidence, unknown or unavailable to the jury, upon which the prosecutor was convinced of the accused’s guilt. See Thompson v. State, 318 So.2d 549, 552 (Fla. 4th DCA 1975). See also Williamson v. State, 459 So.2d 1125 (Fla. 3d DCA 1984). The State has failed to carry its burden of demonstrating that this improper argument was harmless beyond a reasonable doubt as to the assault. See State v. DiGuilio, 491 So.2d 1129 (Fla.1986)(noting it is the State’s burden, “as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict -or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction.”) We therefore reverse and remand for a new trial on the assault charge.[3]
We reach a different result, however, with regard to the remaining charges of resisting an officer with violence and battery on a law enforcement officer. The contents of the 911 calls were relied upon to establish the assault charge, and the events described during those calls all took place before the officers arrived on the scene. The 911 calls (and thus the improper closing argument regarding the *436 calls and Llerena) related to the jury’s assessment of the evidence regarding the assault charge, not the charges of resisting an officer with violence and battery on a law enforcement officer.
While those offenses occurred shortly after the assault, they involved evidence and witnesses which were distinctly separate from the evidence relating to the assault. The 911 calls did not describe any of Diaz’s interaction with the police officers, or any events which took place following their arrival. The resisting and battery charges pitted the testimony of the two police officers against the contrasting testimony of the two neighbors, requiring no consideration of the contents of the 911 calls or the prosecutor’s improper argument at closing. Based upon our review of the evidence presented at trial and the entirety of the record, we conclude that the State has demonstrated beyond a reasonable doubt that the improper closing argument did not contribute to the jury’s verdicts for these two charges, and we therefore affirm those convictions and sentences.
Affirmed in part, reversed in part, and remanded for a new trial on the charge of assault.

.We recognize that the facts are somewhat unique in that the 911 caller and the non-testifying witness were one and the same person. The State’s argument to the jury that Llerena "would have told you exactly the same things that's on the 911 call” was nevertheless improper. There is simply no way of knowing whether Llerena’s trial testimony would have coincided with, conflicted with, or recanted altogether what she said in the 911 calls. By its improper closing argument, however, the State created the clear impression to the jury that the State knew precisely what Llerena would have said had she been called to testify, and that she would have reaffirmed all the statements she made and events she described in the 911 calls. It was certainly reasonable for the jury to infer that this argument was based upon knowledge and information outside the record evidence presented at trial.

. It is established, however, that "where defense counsel comments upon the state's failure to call a witness who is demonstrably competent and available, a reply by the prosecuting attorney that the defense has the same ability to put on the witness does not prejudice the defendant’s right to a fair trial.” Hazelwood, 658 So.2d at 1243.

. We reject Diaz’s claim that the evidence was legally insufficient to establish the crime of assault. See Rogan v. State, 203 So.2d 24 (Fla. 3d DCA 1967).