# Third District Court of Appeal

## State of Florida

Opinion filed July 11, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D16-2371
Lower Tribunal No. 15-17219
_____

**Milton Jackson,**
Appellant,

vs.

**The State of Florida,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Richard L. Hersch, Judge.

Carlos J. Martinez, Public Defender, and Harvey J. Sepler and James Odell, Assistant Public Defenders, for appellant.

Pamela Jo Bondi, Attorney General, and Christina L. Dominguez, Assistant Attorney General, for appellee.

Before ROTHENBERG, C.J., and LAGOA and EMAS, JJ.

## ON MOTION FOR REHEARING

EMAS, J.

We deny appellant's motion for rehearing, withdraw our previous opinion, and substitute the following in its stead.

Milton Jackson was charged by information with armed burglary of an occupied structure with an assault or battery, domestic battery by strangulation, and kidnapping. Following a trial, the jury returned a verdict finding Jackson guilty of trespass (as a lesser included offense of burglary) and misdemeanor battery (as a lesser included offense of domestic battery by strangulation). The jury acquitted Jackson of the kidnapping charge.

On appeal, Jackson contends he is entitled to a new trial because the prosecutor made improper "golden rule" arguments in closing.[1] We affirm, concluding that the prosecutor's arguments were not improper, but were relevant

---

[1] Upon appellant's motion, we granted supplemental briefing in which appellant raised additional instances of allegedly improper comments made by the State during its rebuttal closing argument. However, we find no merit in these claims; the trial court properly overruled objections to comments made in fair response to the defense closing, and properly sustained objections to comments it found improper. To the extent that the trial court improperly overruled an objection to any of these isolated comments, we conclude such error was harmless beyond a reasonable doubt. See Evans v. State, 177 So. 3d 1219 (Fla. 2015); Muhammad v. State, 782 So. 2d 343 (Fla. 2001). The trial court did not abuse its discretion denying appellant's motion for mistrial. Salazar v. State, 991 So. 2d 364 (Fla. 2008).

arguments supported by the evidence at trial, and were made in fair response to the defense's trial theory and closing argument.

## EVIDENCE AND ARGUMENT AT TRIAL

On August 19, 2015, the victim was walking with a friend to a neighbor's house around the corner when Jackson pulled up in his car and called the victim over to talk with him. Jackson and the victim had previously been in an on-again, off-again relationship. The victim told Jackson that she would talk with him when she returned from the neighbor's house. When the victim returned a few minutes later, however, she did not see Jackson or his car. The victim said goodbye to her friend and went inside her house.

Immediately after entering her house, Jackson came up from behind the victim and put her in a chokehold. The victim began to lose consciousness, and Jackson proceeded to drag the victim by her hair into the bedroom where he beat her. Jackson then took the victim into the bathroom where he placed her in the bathtub. While in the bathtub, the victim pretended to be passed out. When Jackson left the bathroom, the victim got out of the bathtub and ran through her back door, fully nude, towards her neighbor, who was outside. The neighbor saw the victim, and also saw Jackson running behind the victim, holding a ceramic crucifix above his head. The neighbor grabbed a glass bottle, broke it in two and

used it to threaten Jackson. Jackson started to laugh, saying "God told me to do it." The police arrived soon thereafter, and Jackson was taken into custody.

At trial, the defense's theory was that the incident didn't even happen, given the absence of any visible injuries on the victim which would be consistent with her description of the vicious attack by Jackson. In closing argument, defense counsel attempted to point out this absence of evidence:

> DEFENSE COUNSEL: [The victim's] version of events is not really what happened that day.
>
> . . . .
>
> [T]here is no[t] even [a] break-up or anything that happens prior to this.
>
> The defendant just happens to be in her home and just happens to decide that he just wants to attack her.
>
> . . . .
>
> He must have been holding on to [the victim] so tightly that she passed out and could not remember and lost consciousness.
>
> Yet, we talked about corroboration in jury selection. You have these photographs [of the victim's injuries]. There's no marks around her neck. There's no bruising around her neck. There's no redness.
>
> There's not one swelling, bruise, fingermarks, scratches, anything around her neck.
>
> It's not there because there was no strangulation, members of the jury. There's no corroboration.

. . . .

> [A]nd also, she mentioned . . . that she was dragged by her hair from one room to the next.
>
> Members of the jury, if someone is holding on to your hair so tightly dragging you from one room to the next you would expect for there to be hair on the floor.
>
> When you look at these photographs you're not going to see that.

. . . .

> If you get hit repeatedly to the head over and over again with a Grey Goose bottle you're going you have bleeding; you're going to have cuts; you're going to need stitches. When you look at those photographs of [the victim] there's no bleeding.

. . . .

> It is impossible to believe her story if there is no Grey Goose bottle and if there is no blood.
>
> They can try and say that, you know, the Rescue cleaned her up and that's why there's no blood in any of the photographs, except that's not what [the victim] said. [The victim] said they didn't do anything. They gave me an ice pack.
>
> She didn't get stitches. She didn't get any bandages. She didn't go to the hospital. No. There's no blood and there's no Grey Goose bottle because it didn't happen the way [the victim] is saying it happened. It didn't happen.

The defense also compared the victim's trial testimony and the statements she made to the officer who arrived on the scene shortly after the crime was committed, noting the inconsistencies.

5

DEFENSE COUNSEL: You're also allowed to consider the prior inconsistent statements. Now, you heard [the victim] testify that she hit her head on the wall. You heard her admit on the stand today that that was the – today in court, over a year later, that is the first time she ever testified to that.

Members of the jury, you didn't leave your common sense at the door. Everyone knows that memories actually fade over time; they don't get better.

We are now over a year, a year and a month later and this is the first time that she's testifying that Mr. Jackson slammed her head into the wall as he was bringing her into the bathroom.

Why is today the first day that she's talking about that? Why is today the first day that she brings that up because her story is starting to unravel. Her version of events is not what really happened that day.

. . . .

As I mentioned there's conflicting testimony if Mr. Jackson even lives there. She sat there and said no, he didn't live there; he didn't live there. You . . . heard Officer Michel say [the victim] told him on the date of the incident that [Jackson] lived there. Well, which one is it: did he live there; did he not live there?

In response to the defense's closing argument, the State made the following argument in its rebuttal closing:

PROSECUTOR: Something that's also very important that I want everybody here to understand. [The victim] walked into her home that night, was put into a chokehold, was dragged by her hair, was hit across the head numerous times with a bottle, and when she realized at one point that she can actually get free she took that option.

But now the defense is trying to say that at the end part of all of this beating, after it all takes place because there's certain things she said –

6

that the Rescue gave her an ice pack instead of cleaning her up. Oh, she wasn't bleeding; she was lying.

Think about what state of mind she's in. You heard the officer. He said trying communicating with her, and she was hyperventilating like she couldn't breathe. She was having a hard time.

Think about the state of mind she's in at that point in time that all these questions were asked to her. What happened? What happened? And she's trying to deal with her own health issues while trying to interact with police-

DEFENSE COUNSEL: Objection, golden rule.

THE COURT: Overruled. Continue. You've got about five minutes left.

The defense preserved this asserted error by contemporaneous objection, and later moved for a mistrial, which the trial court denied. On appeal, Jackson asserts that a new trial is required, because the prosecutor impermissibly invited the jurors to place themselves in the victim's shoes and to feel the pain and suffering experienced by the victim.

**ANALYSIS**

A trial court's ruling on a motion for mistrial is within the sound discretion of the court and will be sustained on appeal absent an abuse of that discretion. Salazar v. State, 991 So. 2d 364 (Fla. 2008); Ford v. State, 802 So. 2d 1121, 1129 (Fla. 2001). See also Diaz v. State, 139 So. 3d 431, 434 (Fla. 3d DCA 2014) (noting: "A trial court's rulings regarding the propriety of comments made during closing argument are reviewed for an abuse of discretion"). In the context of

closing arguments, if the trial court overruled the defense's contemporaneous objection, and we determine that the comments were indeed improper, we apply the harmless error standard of review. Snelgrove v. State, 921 So. 2d 560, 568 (Fla. 2005). This standard places "the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction." Ibar v. State, 938 So. 2d 451, 466 (Fla. 2006) (quoting State v. DiGuilio, 491 So. 2d 1129, 1135 (Fla. 1986)).

Jackson contends that the prosecutor's comments were a prohibited "golden rule" argument, impermissibly inviting the jurors to place themselves in the victim's shoes and to imagine the pain and suffering experienced by the victim. We do not agree.

"'Golden rule' arguments are arguments that invite the jurors to place themselves in the victim's position during the crime and imagine the victim's suffering." Mosley v. State, 46 So. 3d 510, 520 (Fla. 2009).[2] Closely related is the

---

[2] It is worth noting that the concept of a "golden rule" violation was originally limited in application to civil trials where the plaintiff invited jurors to place themselves in the shoes of the plaintiff and asked jurors to award an amount of damages they (the jurors) would want if they suffered the same injuries suffered by plaintiff. See, e.g., Bullock v. Branch, 130 So. 2d 74, 75-76 (Fla. 1st DCA 1961) (disapproved on other grounds by Murphy v. Int'l Robotic Syss., Inc., 766 So. 2d 1010 (Fla. 2000)) (first reported Florida case addressing "golden rule" violation, where plaintiff's counsel argued to the jury: "[T]he court will instruct you that

8

concept that closing argument "must not be used to inflame the minds and passions of the jurors so that their verdict reflects an emotional response to the crime or the defendant rather than the logical analysis of the evidence in light of the applicable law." Lewis v. State, 780 So. 2d 125, 129 (Fla. 3d DCA 2001).

---

[plaintiff is] entitled to compensation at your hand at such figure that you think is right for his pain suffering and for his discomfort, not only in the past but in the further. How much would you pay to have half inch cut inflicted in your skull? . . . . What would I have to pay to inflict a half inch cut into your skull, to render you unconscious, to put you home in bed for a week, to force you to use a cane or crutches for months after that, and to leave you for the balance of your life with your walk affected, with your speech affected, with a tremor, with your memory affected, with your handwriting affected? What do you think it's worth?") Some years later, the concept of golden rule migrated to closing arguments in criminal trials as well. See, e.g., Cumbie v. State, 378 So. 2d 1 (Fla. 1st DCA 1978) (quashed on other grounds by State v. Cumbie, 380 So. 2d 1031 (Fla. 1980)) (holding it was a golden rule violation for state to argue to jury in sexual battery case: "Now, we men often times can't appreciate the assault on a body that a woman has to undergo when she is being raped or attempted to be raped, but I think we can think about it and kind of try to imagine, if you think of yourself in a similar situation . . . .")

Nevertheless, most of the decisions condemning arguments as golden rule violations in the criminal trial context could just as easily have been condemned on broader principles which prohibit arguments that, for example, "unduly arouse and inflame the sympathy, prejudice and passions of the jury to the detriment of the accused." Barnes v. State, 58 So. 2d 157, 159 (Fla. 1951). See also Gonzalez v. State, 136 So. 3d 1125, 1153 (Fla. 2014). The salient point is this: assigning a label (such as "golden rule") to an argument in a vacuum does little to advance the requisite analysis. The mere fact that a prosecutor in closing argument addresses a victim's mental state, physical state, or injuries suffered does not, standing alone, render the argument a golden rule violation. Such an ipso facto analysis ignores the need to consider the surrounding circumstances of the comment, including the trial evidence supporting the argument, the context in which the argument is made, the relevance and purpose for the argument, and whether it is in fair reply to the issues raised or arguments advanced by the defense.

Importantly, the State "can comment on the crime as long as the comments 'are based on evidence introduced at trial and are relevant to the circumstances of [the crime] . . .' but may not 'cross the line by inviting the jurors to place themselves in the position of the victim.'" Braddy v. State, 111 So. 3d 810, 842 (Fla. 2012) (quoting Mosley, 46 So. 3d at 521).

Thus, in evaluating whether an argument violates the "golden rule," we should not limit our consideration to the words uttered. Rather, we must also consider the relevance and purpose for which the argument was made; the trial evidence supporting the argument; the context in which the argument is made; and whether the argument is in fair reply to the issues raised or arguments advanced by the defense.

Applying these considerations to the instant case, we conclude there was no golden rule violation. The State's closing arguments did not ask or invite the jurors to place themselves in the shoes of the victim to imagine her pain and suffering. Rather, the State pointed to the trial testimony and other evidence in an effort to rebut the defense theory (as argued in the defense closing) that the incident did not even happen, or at least did not happen in the manner and to the extent contended by the State. In support of this theory, the defense closing highlighted the inconsistencies between the victim's trial testimony and her

10

statements to the police, as well as the absence of evidence to corroborate the victim's account of the physical violence visited upon her by Jackson.[3]

On direct examination, Officer Michel testified that the victim was "wet all around," was "perspiring heavily and breathing heavily. She couldn't speak because she was gasping for air. She seemed to be fading in and out of consciousness." Officer Michel further testified that he tried to speak with the victim but "it wasn't feasible to talk to her. She couldn't talk. She could barely breathe. All she kept saying was that she wanted to lay down. She couldn't breathe. Her eyes kept rolling in the back of her head."

We conclude that the prosecutor's argument was advanced in response to the defense's claim that the victim's version of the events was not credible, was inconsistent with her prior statements to the police, and was uncorroborated by any evidence of injuries one would expect to see from the attack she described. Viewed in the context of the record and juxtaposed against the defense's theory, the complained-of comments were simply a part of the State's argument that Officer Michel's observations of the victim and her condition, made shortly after

---

[3] Indeed, it has not escaped our notice that the jury, by its verdict, apparently agreed with defense counsel that there was at least a reasonable doubt regarding the nature and severity of any attack upon the victim: Jackson was charged with domestic battery by strangulation, but the jury found him guilty of the lesser included offense of simple (misdemeanor) battery; Jackson was charged with armed burglary with an assault or battery, but the jury found him guilty of the lesser included offense of trespass; and Jackson was charged with kidnapping, but the jury found him not guilty of this charge.

11

the crime, supported the victim's version of what happened on the night in question. The comments were also offered in support of the State's contention that any inconsistencies between the victim's statements on the scene and her trial testimony could be explained by the victim's mental and physical state at the time she first spoke with Officer Michel.

**CONCLUSION**

The mere fact that the State asked the jury to consider the victim's mental and physical condition shortly after the crime was committed did not transform this argument into a golden rule violation. Instead, because the arguments advanced by the State were based upon and supported by the evidence introduced at trial, were relevant to an issue in dispute, were made in fair reply to the arguments and theories advanced at trial by the defense, and were not made to inflame the passions or sympathy of the jury or otherwise improperly prejudice the defendant, we find the complained-of argument was not a golden rule violation and the trial court properly overruled the objection.

Affirmed.